MOBIL OIL CORPORATION, Petitioner,

v.

Anna Mae ELLENDER, Individually, and as Representative of the Estate of Eli Arnold Ellender, Deceased, James G. Ellender, Dwain A. Ellender, Ricky Ellender, W. Craig Ellender, Arnold Kent Ellender, Jr., and Florence Faye Ellender Hoyt, Respondents.

No. 96–1299.

Supreme Court of Texas.

Argued March 4, 1998.

Decided May 8, 1998.

Lori Meghan Gallagher, Houston, Michael L. Baker, Beaumont, Mark L. Carlton, Fairfax, VA, Laura B. Rowe, Elizabeth A. Wiley, Mariann Sears, Houston, for Petitioner.

Paul F. Ferguson, Darren Brown, Beaumont, Stephen D. Susman, Charles R. Eskridge, Houston, James A. Holmes, Dallas, J. Keith Hyde, Beaumont, Otto D. Hewitt, III, Alvin, Mark C. Hall, Lubbock, for Respondents.

BAKER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, ENOCH, SPECTOR, ABBOTT, and HANKINSON, Justices, join.

In this appeal, Mobil Oil Corporation asserts that the court of appeals erred by: (1) affirming the punitive damages awarded against Mobil because there is legally insufficient evidence of gross negligence and malice; (2) improperly reviewing the factual sufficiency of the punitive damages award; (3) recalculating the punitive damages award to include an extra $91,555.58; and (4) denying Mobil a $500,000 settlement credit. We hold that: (1) there is legally sufficient evidence of gross negligence to support Mobil's liability for punitive damages; (2) the court of appeals properly reviewed the factual sufficiency of the punitive damages award; (3) the court of appeals improperly added $91,555.58 to the punitive damages amount; and (4) the court of appeals improperly denied Mobil's request for a settlement credit.

Therefore, we affirm the court of appeals' judgment that there is legally sufficient evidence of Mobil's gross negligence and we

affirm the court of appeals' factual sufficiency review of the punitive damages award. We reverse the court of appeals' erroneous $91,555.58 award in extra punitive damages and its denial of a settlement credit. We remand to the trial court and instruct the trial court to provide the Ellenders an opportunity to prove whether there was any allocation between actual and punitive damages in the settlement agreement. We further instruct the trial court to allow a settlement credit consistent with this opinion, to recalculate punitive damages, excluding the estate's actual damages, and to recalculate prejudgment interest.

## I. BACKGROUND

Eli Ellender worked periodically as an independent contractor millwright at Mobil's Beaumont refinery and chemical plants between 1963 and 1977. As a millwright, Ellender repaired, serviced, and cleaned pumps, product lines, and other equipment. While working at Mobil, Ellender was exposed to benzene. He was diagnosed with acute myelogenous leukemia and died in 1989. Ellender's surviving family, individually and on behalf of his estate, sued Mobil and other defendants, alleging that exposure to benzene caused Ellender's leukemia and subsequent death. Specifically, the Ellenders alleged that Mobil was negligent, grossly negligent, and malicious in: (1) failing to warn Ellender about his exposure to benzene on Mobil's premises and the risks associated with it, and (2) failing to protect Ellender from those risks. Just before trial, all defendants, except Mobil, agreed to settle. Before the trial court submitted the case to the jury, Mobil elected a dollarfor-dollar settlement credit. See TEX. CIV. PRAC. & REM.CODE § 33.014. The jury found that Mobil's conduct was grossly negligent and malicious and awarded the Ellenders $622,888.97 in compensatory damages and $6,000,000 in punitive damages.

After the jury verdict, the Ellenders and the settling defendants executed a settlement agreement. The Ellenders received $500,000

in exchange for releasing all claims for actual and punitive damages against the settling defendants. The agreement did not allocate the settlement amount between actual and punitive damages. Mobil opposed the Ellenders' motion for judgment, arguing that the proposed judgment did not reduce the actual damages award by the $500,000 settlement amount.

The trial court rendered judgment on the jury's verdict. The trial court denied Mobil a settlement credit, finding that Mobil did not prove its right to a settlement credit. Mobil moved to modify the judgment, filed a verified copy of the settlement agreement, and again requested the settlement credit. The trial court again refused to credit Mobil with the settlement amount.

The court of appeals affirmed the trial court's denial of settlement credit, holding that Mobil had not met its burden to prove the settlement amount. The court of appeals did not reach the Ellenders' second argument that Mobil's failure to prove the allocation between actual and punitive damages was an additional reason to deny a settlement credit. The court of appeals also affirmed the gross negligence and malice findings and the punitive damages award. However, the court of appeals held that the trial court erroneously added prejudgment interest to actual damages before applying the statutory punitive damages cap.[1] The court of appeals recalculated punitive damages and modified the trial court's judgment accordingly. In its recalculation, the court of appeals sua sponte included the estate's actual damages of $22,888.97 in the total actual damages amount, so that it equaled $622,888.97. Therefore, when the court of appeals reapplied the statutory cap by multiplying $622,888.97 by four, the punitive damages awarded totaled $2,491,555.88. This amount was $91,555.88 ($22,888.97 × 4) over what the punitive damages would have been had the court of appeals not included the estate's actual damages.

---

1. See former TEX. CIV. PRAC. & REM.CODE § 41.007, Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex. Gen. Laws 37, 94, amended and renumbered by Act of April 6, 1995, 74th Leg., ch. 19, § 1, 1995 Tex. Gen. Laws 108.

## II. LEGAL SUFFICIENCY— GROSS NEGLIGENCE

Mobil first argues that there is legally insufficient evidence to support the jury's findings that Mobil's conduct was grossly negligent and malicious. The jury's answer to the punitive damages question was conditioned on a finding of gross negligence or of gross negligence *and* malice. The jury found both and awarded punitive damages. We conclude that there is legally sufficient evidence of gross negligence to uphold the punitive damages award against Mobil. Because Mobil relies solely on its gross negligence arguments to support its malice arguments, and because the gross negligence finding alone will support the punitive damages award in this case, we need not consider Mobil's argument that no evidence supports the jury's malice finding.

### A. APPLICABLE LAW

#### 1. Gross Negligence

■ Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994).[2] Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *See Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995); *Moriel*, 879 S.W.2d at 22–23. Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *See Ung*, 904 S.W.2d at 641; *Moriel*, 879 S.W.2d at 22. Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *See Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993). Circumstantial evidence is sufficient to prove either element of gross negligence. *See Moriel*, 879 S.W.2d at 22–23; *Wal–Mart Stores*, 868 S.W.2d at 327.

#### 2. Punitive Damages— Corporate Liability

■ A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence. *See Fort Worth Elevators, Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 406 (1934), *overruled on other grounds by Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712 (Tex. 1987). Because a corporation can "act only through agents of some character," *Fort Worth Elevators*, 70 S.W.2d at 402, this Court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex.1997). A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent. *See King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950) (adopting the RESTATEMENT OF TORTS section 909); *Purvis v. Prattco, Inc.*, 595 S.W.2d 103, 104 (Tex.1980) (citing the RESTATEMENT (SECOND) OF TORTS section 909,

---

**2.** In 1995, after this case was tried, the Legislature substituted malice for gross negligence as the prerequisite for punitive damages in cases like this one. However, the Legislature also redefined "malice" as:

(A) a specific intent by the defendant to cause substantial injury to the claimant [or]

(B) an act or omission
(i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*See* TEX. CIV. PRAC. & REM.CODE § 41.001(7). The malice definition in section 41.001(7)(B) mirrors this Court's definition of gross negligence in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994). Therefore, this opinion's legal sufficiency review of gross negligence is relevant to legal sufficiency review of malice as redefined by section 41.001(7)(B).

which is unchanged from the original RE-STATEMENT OF TORTS section 909).

■ A corporation is also liable if it commits gross negligence through the actions or inactions of a vice principal. *See Hammerly Oaks,* 958 S.W.2d at 389. "Vice principal" encompasses: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom the master has confided the management of the whole or a department or a division of the business. *See Hammerly Oaks,* 958 S.W.2d at 391.

■ In determining whether acts are directly attributable to the corporation, the reviewing court does not simply judge individual elements or facts. Instead, the court should review all the surrounding facts and circumstances to determine whether the corporation itself is grossly negligent. *See McPhearson v. Sullivan,* 463 S.W.2d 174, 176 (Tex.1971). Whether the corporation's acts can be attributed to the corporation itself, and thereby constitute corporate gross negligence, is determined by reasonable inferences the factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to a plaintiff's alleged damages. *See Bowman v. Puckett,* 144 Tex. 125, 188 S.W.2d 571, 574 (1945).

### 3. Standard of Review

■ An appellate court must sustain a gross negligence finding if legally sufficient evidence shows both that the complained of act or omission was likely to result in serious harm and that the defendant was consciously indifferent to the risk of harm. *See Moriel,* 879 S.W.2d at 22, 24. If there is no legally sufficient evidence of either gross negligence's objective or subjective elements, this Court must reverse a gross negligence finding. *See Ung,* 904 S.W.2d at 642 (reversing the court of appeals' judgment and rendering judgment that plaintiffs take nothing because there was no evidence of gross negligence's objective element). In evaluating legal sufficiency, we determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Moriel,* 879 S.W.2d at 25 (*citing* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 522, 523 (1991)).

### B. ANALYSIS

#### 1. Gross Negligence—Objective Element

■ Mobil asserts that there is legally insufficient evidence of an extreme risk to Ellender of serious injury from benzene exposure at Mobil's facilities. Mobil argues that the trial court and the court of appeals improperly relied on evidence of Mobil's conduct and the resultant risks arising after Ellender worked at Mobil. We conclude that legally sufficient evidence shows that, viewed objectively from Mobil's standpoint when Ellender worked at Mobil, Mobil did not warn contract workers about benzene exposure or protect them from it and this failure involved an extreme degree of risk to those workers.

There is evidence that, from Mobil's viewpoint during the period Ellender worked at Mobil in the 1960s and 1970s, the extreme degree of risk associated with benzene exposure was common knowledge in the petrochemical industry. As early as 1926, the National Safety Council reported that "[t]he most characteristic pathological effect of [benzene] is perhaps its destructive influence upon the cells of the blood and the blood forming organs." Mobil stipulated NSC membership dating back to 1922. In 1948, the American Petroleum Institute reported that benzene could cause leukemia and that the only absolutely safe concentration for benzene was zero. The API report also warned that a person should avoid all contact with benzene if possible, but that if the hands must contact the solvent, then a person should use neoprene gloves or protective creams. Mobil stipulated API membership dating back to 1919.

Dr. R.J. Potts, Mobil's medical director for the Western region (including Beaumont) from 1960 to 1983, testified that he believed Mobil had knowledge of benzene hazards in the 1950s. The record shows other petrochemical companies had knowledge of ben-

zene hazards. For example, Conoco's 1953 Employee Safety Manual included information from the 1948 API report and warned that the only safe level of benzene exposure was zero. Conoco also warned that workers should use air masks in case of benzene leaks and neoprene gloves in case of hand contact. In 1948, Exxon noted a definite correlation between benzene and cancer. A 1943 report to Shell warned that prolonged exposure to low concentrations of benzene may be very dangerous.

There is evidence that Ellender's benzene exposure was dangerously high. Mobil's own benzene samples, taken at the olefins and aromatic plant where Ellender periodically worked in the 1960s and 1970s, showed dangerous levels of benzene exposure between 1976 and 1978. These levels were many times more than levels the Occupational Safety and Health Administration considered dangerous in 1977. Roy Gatlin, one of Ellender's co-workers, testified that on many occasions he and Ellender steam-cleaned equipment containing benzene and inhaled benzene. Gatlin and other co-workers also testified that workers used benzene, furnished by Mobil, to wash their tools and hands as often as daily. Russell Witzke, an industrial hygienist at Mobil from 1973 to 1976 admitted that benzene was always being spilled on the ground when piping equipment was connected and disconnected.

Dr. Eula Bingham, a toxicologist specializing in environmental occupational health, reviewed testimony about Ellender's exposure to benzene and described it as "substantial." Dr. John M. Dement, a industrial hygienist and epidemiologist, reviewed the same testimony and described Ellender's exposure as "significant lifetime exposure that would have put him at increased risk for leukemia."

Mobil counters that because there is no evidence that *a vice principal's conduct* involved an extreme degree of risk to contract workers like Ellender, Mobil cannot be liable for gross negligence. However, in reviewing all the facts and circumstances, we conclude that there is evidence that Mobil's own acts and omissions involved an extreme degree of risk to contract workers like Ellender.

David B. Dunham, a Mobil industrial hygienist, testified that although Mobil monitored its employees, it had an "unwritten practice or policy" not to monitor contract workers and that when he attempted to monitor contract workers, he was told not to. Ellender's co-workers testified that they never saw any signs warning them of benzene hazards at Mobil and that Mobil did not monitor them for exposure or provide them with protective gear when they worked around benzene. Moreover, Mobil did not include any reference to benzene or other chemicals in its 1967 pamphlet entitled "Mobil Safety and Security Regulations for Contract Workers." Dr. Josh Esslinger, a former medical consultant for Mobil in Beaumont, testified that he knew workers washed their hands in benzene and that such a practice indicated that workers were not adequately warned of benzene hazards. Dr. Dement testified that Mobil's industrial hygiene program was poor and practically nonexistent for contractors. This is evidence from which the jury could reasonably infer that Mobil had a company policy of not monitoring contract workers for benzene exposure, not warning them of the dangers of such exposure, and not providing them with protective gear and that this policy involved an extreme degree of risk to those workers. *See generally McPhearson*, 463 S.W.2d at 174. Thus, there is evidence that acts and omissions of Mobil itself involved an extreme degree of risk to contract workers like Ellender.

Relying on *Ung*, Mobil argues that it is not grossly negligent for not taking all the precautions it could have. *See Ung*, 904 S.W.2d at 641–42. Specifically, Mobil claims that it complied with the industrial standards for benzene exposure that existed when Ellender worked at Mobil and that Mobil took steps to protect employees and contract workers from benzene exposure. Mobil essentially argues that the Court should overturn the jury's gross negligence finding because there is evidence that Mobil's conduct was not grossly negligent.

Mobil's argument is flawed. As this Court made clear in *Burk Royalty* and *Moriel*, the fact that a defendant exercises some care

does not insulate the defendant from gross negligence liability. *See Moriel*, 879 S.W.2d at 20 (discussing cases before *Burk Royalty* that erroneously focused on "entire want of care" part of the gross negligence definition in reasoning that "some care" defeated a gross negligence finding); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 921–922 (Tex.1981). Therefore, Mobil's reference to evidence of some care does not affect our legal sufficiency review of the jury's gross negligence finding.

We conclude that there is legally sufficient evidence that Mobil's conduct, viewed objectively from Mobil's point of view when Ellender worked at Mobil, involved an extreme degree of risk to contract workers like Ellender.

## 2. Gross Negligence—Subjective Element

■ Mobil also asserts that there is legally insufficient evidence of gross negligence's subjective element. Mobil argues that the court of appeals erred in relying on evidence of general knowledge of some benzene exposure risks to affirm the finding of actual awareness of an extreme risk. Mobil further argues that there is no evidence that a Mobil vice principal knew of an extreme risk to contract workers. We conclude that there is legally sufficient evidence that Mobil vice principals had actual awareness of the extreme risk benzene exposure involves, but nevertheless proceeded in conscious indifference to the rights, safety or welfare of Ellender and other contract workers.

Dr. Potts, Mobil's regional medical director from 1960 to 1983, testified that even before he became medical director he knew that benzene caused, among other diseases, aplastic anemia. He knew that washing hands and tools in benzene was hazardous. He further testified that he and Dr. Stewart, a physician working directly under him at the Beaumont refinery, implemented a plan "to see that noxious agents [including benzene] were not being used in a manner that was deleterious to employee health." Dr. Esslinger testified that Mobil had a policy to conduct blood and urine tests on its own employees for benzene exposure and that he carried out that policy.

Dunham testified that Mobil had a fleet of industrial hygiene monitors who monitored employees for benzene, among other chemicals, and who sent their results to Mobil's corporate medical director. Some of these samples, including one sample of a Mobil maintenance mechanic doing work identical to the work Ellender periodically did, showed excessive levels of benzene exposure. Further, in 1969, Mobil's Employee Relations Division established "a medical and industrial hygiene program designed to protect the health of those employees who handle benzene and benzene related products." The program directed Mobil doctors, hygienists, and other personnel to monitor employees for benzene exposure, to furnish them benzene protective gear, and to instruct employees on proper benzene handling. The program recognized that long-term benzene inhalation is the most likely source of benzene intoxication and that continuous exposure to benzene affects the formation of red blood cells in bone marrow. This circumstantial evidence is legally sufficient evidence that Mobil vice principals knew that not providing protective gear, not monitoring and not warning workers about benzene exposure was an extreme risk to contract workers, like Ellender, who routinely came into contact with benzene at Mobil.

Furthermore, there is probative evidence that despite this knowledge, Mobil proceeded in conscious indifference to the rights, safety or welfare of contract workers like Ellender. Contrary to Mobil's policy of warning, monitoring, and protecting its employees, Mobil did not warn, monitor, or protect contract workers from benzene exposure. Dunham admitted that personal monitoring and medical surveillance are the only sure ways to assess a worker's exposure to benzene. Yet, Dunham testified that Mobil had an "unwritten practice or policy" not to monitor contract workers and that when he attempted to monitor contract workers, he was told not to. Ellender's co-workers testified that they were not warned about benzene hazards or provided benzene protective equipment and that Mobil actually furnished benzene for workers to wash their tools. Dr. Dement testified that Mobil's failure to inform work-

ers about benzene exposure reflected Mobil's conscious disregard for worker safety. Evidence that Mobil had a policy of monitoring and protecting its own employees but chose not to do the same for contract workers provides additional facts and circumstances for the jury to infer that Mobil knew the risks of benzene exposure yet proceeded with conscious indifference toward the rights, safety or welfare of contract workers vis-a-vis that risk.

Because there is legally sufficient evidence that Mobil was grossly negligent, we affirm the jury's finding of gross negligence against Mobil.

### III. FACTUAL SUFFICIENCY REVIEW—PUNITIVE DAMAGES AWARD

■ Mobil argues that the court of appeals did not properly review the factual sufficiency of the punitive damages award. Specifically, Mobil argues that the court did not properly detail all the evidence in light of the Kraus[3] factors. We disagree.

■ When conducting a factual sufficiency review of a punitive damages award amount, irrespective of whether the court of appeals ultimately affirms or reverses the award, the court must detail all relevant evidence in its opinion. See Ellis County State Bank v. Keever, 915 S.W.2d 478, 479 (Tex.1995)(remanding to the court of appeals to detail all the evidence instead of just the evidence supporting the punitive damages award); Moriel, 879 S.W.2d at 31. The court of appeals must explain why the evidence does or does not support the punitive damages amount considering five factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. See Keever, 915 S.W.2d at 479; Kraus, 616 S.W.2d at 910; see also TEX. CIV. PRAC. & REM.CODE §§ 41.011 and 41.013 (requiring courts of appeals, in reviewing evidence of punitive damages amounts, to consider the

evidence or lack of evidence with specificity in light of the Kraus factors).

The court of appeals misdefined factual sufficiency review of punitive damages awards as detailing "the evidence supportive of the punitive damage award under Kraus" and "the evidence relating to why the evidence supports such award." 934 S.W.2d at 458 (emphasis added). Nevertheless, the court of appeals recognized its duty to review "the evidence supportive of an affirmative finding of gross negligence and apply such evidence, along with any other evidence, in determining whether or not the exemplary damages awarded [were] reasonable." 934 S.W.2d at 456 (emphasis added).

Further, while the court of appeals may not have accurately stated the proper punitive damages review throughout its opinion, it complied with the Kraus, Moriel, and Keever requirements. Although the court of appeals' Kraus analysis seems to restate only the evidence supporting the punitive damage award, the court of appeals painstakingly detailed all relevant evidence in its exhaustive review of the gross negligence finding. Therefore, its Kraus analysis is simply an abbreviated version of its gross negligence review of all the evidence. The court of appeals stated:

> Explaining "why" the evidence either does or does not support the punitive damages requires revisiting gross negligence evidence on a factual sufficiency standard. In compliance, we consider relevant evidence through the guidelines enumerated in Kraus. The only feasible means of doing so is though a restatement of the evidence supportive of gross negligence. It shall also become necessary to restate such evidence yet a third time under the discussion of 'why.'

934 S.W.2d at 457 (emphasis added). Finally, the court of appeals properly applied the Kraus factors and explained why the evidence supported the punitive damages award. Accordingly, we conclude that the court of appeals' factual sufficiency review of the punitive damages award, despite the

---

**3.** See Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908 (Tex.1981).

court's occasional misleading language, was proper.

## IV. PUNITIVE DAMAGES AWARD— RECALCULATION

■ Mobil also argues that the court of appeals erred by including, sua sponte, the estate's actual damages in its punitive damages calculation, thereby adding $91,555.58 to the punitive damages award. We agree. A court of appeals cannot modify a judgment without a point of error asking it to do so. *See Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986)(holding that the court of appeals erred in modifying the judgment to include attorneys fees when the trial court's refusal to grant attorneys fees was not the subject of a point of error).

Here, the jury charge asked the jury to apportion the punitive damages award, if any, between the individual plaintiffs, excluding Eli Ellender's estate. Accordingly, the trial court's judgment excluded the estate's actual damages award in its punitive damages calculation. The Ellenders did not complain about the trial court's punitive damages calculation.

The court of appeals recalculated punitive damages to exclude prejudgment interest. For no apparent reason, the court's recalculation included the estate's actual damages and thus, resulted in $91,555.58 more punitive damages than the trial court's award. Because the Ellenders did not appeal the trial court's exclusion of the estate in its punitive damages calculation, the court of appeals erred in including the estate's actual damages in its punitive damages recalculation. *See Karnes,* 717 S.W.2d at 903.

## V. SETTLEMENT CREDIT— BURDEN OF PROOF

Lastly, Mobil argues that the court of appeals erred in affirming the trial court's refusal to grant Mobil a $500,000 settlement credit. The court of appeals held that Mobil did not meet its burden to prove the settlement amount. The Ellenders argue that even if Mobil did prove the settlement amount, Mobil's failure to allocate the settlement amount between actual and punitive damages is an additional reason to affirm the denial of settlement credit. We disagree with both the court of appeals' holding and the Ellenders' allocation argument.

### A. SETTLEMENT AMOUNT

■ Chapter 33 of the Texas Civil Practice and Remedies Code governs settlement credit in this case. *See* TEX. CIV. PRAC. & REM.CODE § 33.002(a) ("[T]his chapter applies to any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought."). Section 33.012(b) provides:

If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:

(1) the sum of the dollar amounts of all settlements; or

(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000;

(B) 10 percent of those damages from $200,001 to 400,000;

(C) 15 percent of those damages from $400,001 to 500,000;

(D) 20 percent of those damages greater than $500,000.

TEX. CIV. PRAC. & REM.CODE § 33.012(b). When there is a settlement covering some or all of the damages awarded in the judgment, section 33.012 requires the trial court to reduce the judgment accordingly. *See* TEX. CIV. PRAC. & REM.CODE § 32.012(b). The only question left is by what amount the trial court should reduce the judgment.

Section 33.014 provides:

If a claimant has settled with one or more persons, an election must be made as to which dollar credit is to be applied under Section 33.012(b). This election shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and, when

made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected Subdivision (2) of Section 33.012(b).

TEX. CIV. PRAC. & REM.CODE § 33.014. Thus, for a dollar-for-dollar settlement credit, Chapter 33 requires a written dollar-for-dollar credit election before the case is submitted to the factfinder. *See* TEX. CIV. PRAC. & REM CODE § 33.014. Because the statute is silent on which party has the burden to prove the settlement amount, we refer to the common law. *See First Title Co. v. Garrett,* 860 S.W.2d 74, 78 (Tex.1993)(relying on common law principles for settlement credit determination because Chapter 32 of the Civil Practice and Remedies Code does not consider settlement credit).

At common law, a defendant seeking a settlement credit has the burden of proving its right to such a credit. *See First Title,* 860 S.W.2d at 78. This burden includes proving the settlement credit amount. A party can meet this burden by placing the settlement agreement or some evidence of the settlement amount in the record. *See First Title,* 860 S.W.2d at 79. If a party fails to meet this burden, the party is not entitled to a dollar-for-dollar credit and the trial court is limited to using section 32.012(b)(2) to reduce the judgment.

Here, the court of appeals held that Mobil did not meet its burden to prove the settlement amount because Mobil did not prove the amount by a judicial admission, a stipulation, judicial notice, or properly admitted documents or testimony. However, neither Chapter 33 nor existing case law demands such proof. For a dollar-for-dollar settlement credit, Chapter 33 requires only a written election before the case is submitted to the factfinder. *See* TEX. CIV. PRAC. & REM. CODE § 33.014. And, *First Title* requires only that the record show, in the settlement agreement or otherwise, the settlement credit amount. *See First Title,* 860 S.W.2d at 74.

The record here shows that Mobil first informed the trial court of the $500,000 settlement amount when the Ellenders' attorneys announced the settlement in open court during trial. Later, Mobil's written opposi-

tion to the Ellenders' motion for judgment included the settlement amount. The Ellenders did not contest the $500,000 settlement amount. Thus, we conclude that by placing the uncontested settlement amount in the record, Mobil met its burden of proof on the settlement amount.

### B. ALLOCATION OF SETTLEMENT AMOUNT

 The court of appeals did not consider the Ellenders' argument that Mobil was obligated to allocate between actual and punitive damages in the settlement amount. We have the option to consider the Ellenders' allocation argument to determine if it will support the court of appeals' judgment denying Mobil a settlement credit or to remand the issue to the court of appeals. *See First Baptist Church v. Bexar County Appraisal Review Bd.,* 833 S.W.2d 108, 111 (Tex.1992). To serve judicial economy, we choose to consider the allocation argument.

A defendant cannot receive credit for settlement amounts representing punitive damages. *See* TEX. CIV. PRAC. & REM.CODE § 33.002(c)(2) ("This chapter does not apply to ... a claim for exemplary damages included in an action to which this chapter otherwise applies."); *see also Hill v. Budget Fin. & Thrift Co.,* 383 S.W.2d 79, 81 (Tex.Civ. App.—Dallas 1964, no writ) (holding that a defendant cannot receive credit for settlement amounts representing punitive damages, which are not common damages but are individual in nature); *Howard v. General Cable Corp.,* 674 F.2d 351, 358 (5th Cir.1983) (citing *Hill,* 383 S.W.2d at 79); *Paschall v. Peevey,* 813 S.W.2d 710, 712 (Tex.App.—Austin 1991, writ denied) (citing *Hill,* 383 S.W.2d at 79). Chapter 33 does not specify which party has the burden of proving the allocation between actual and punitive damages in a settlement amount. Again, common law provides the general rule.

In *Hill,* the court of appeals held that the party seeking the settlement credit has the burden to prove the allocation of the settlement amount between actual and punitive damages. *See Hill,* 383 S.W.2d at 81–82. In *Hill,* the settlement agreement itself allocated between actual and punitive damages. *See Hill,* 383 S.W.2d at 81. When the non-

settling defendant claimed a credit equaling the entire settlement amount, the court of appeals held that the settlement agreement was conclusive proof of the proper allocation. *See Hill,* 383 S.W.2d at 83. Therefore, the court limited the defendant's settlement credit to that part of the settlement amount expressly representing actual damages. *See Hill,* 383 S.W.2d at 83.

In *Texas Gen. Petroleum Corp. v. Leyh,* 52 F.3d 1330, 1340 (5th Cir.1995), the court placed the burden on plaintiffs to show that a settlement does not involve a double recovery. *See also United States Indus. v. Touche Ross & Co.,* 854 F.2d 1223, 1262 (10th Cir.1988). Plaintiffs can meet this burden by offering into evidence a written settlement agreement specifically allocating damages to each cause of action. *See Leyh,* 52 F.3d at 1340 (reasoning that a plaintiff that is a party to the settlement agreement is in a better position than a nonsettling defendant to allocate damages in the settlement). While *Leyh* is not directly on point, it is analogous. In cases involving allocation between actual and punitive damages, settling plaintiffs are in a better position than nonsettling defendants to insure that the settlement award is allocated between actual and punitive damages.

Here, unlike in *Hill,* the settlement agreement released the Ellenders' actual and punitive damages claims without allocating between them. Without an allocation, Mobil, who was not a party to the settlement, had almost no ability to prove which part of the settlement amount represented actual damages. Nonsettling parties should not be penalized for events over which they have no control. *See Sisters of Charity of the Incarnate Word v. Dunsmoor,* 832 S.W.2d 112, 117 (Tex.App.—Austin 1992, writ denied) (holding that prejudgment interest is based on the amount of the judgment, not the total amount of damages awarded by the jury, because nonsettling defendants have no control over settlement negotiations and should

not be forced to pay prejudgment interest on settling defendants' parts of a damages award). When the settlement agreement does not allocate between actual and punitive damages, requiring a nonsettling party to prove the agreement's allocation before receiving a settlement credit not only unfairly penalizes the nonsettling party but also allows settling parties to abrogate the one satisfaction rule. *See Hess Oil Virgin Islands Corp. v. UOP, Inc.,* 861 F.2d 1197, 1208 (10th Cir.1988); *United States Indus.,* 854 F.2d at 1262. Settling parties could prevent nonsettling parties from receiving settlement credit by refusing to allocate between actual and punitive damages in settlement agreements. *See United States Indus.,* 854 F.2d at 1262. The better rule is to require a settling party to tender to the trial court, before judgment, a settlement agreement allocating between actual and punitive damages as a condition precedent to limiting dollar-for-dollar settlement credits to settlement amounts representing actual damages. *Accord Howard,* 674 F.2d at 351 (holding that the defendant was entitled to a credit equaling the full amount of the settlement when the plaintiff conceded that the agreement did not indicate whether it covered punitive damages).

Therefore, we hold that to limit a nonsettling party's dollar-for-dollar settlement credit to an amount representing actual damages, the settling party must tender a valid settlement agreement allocating between actual and punitive damages to the trial court before judgment.[4] Otherwise, the nonsettling party is entitled to a credit equaling the entire settlement amount.

Because we announce a new proposition of law today, we remand this action to the trial court to allow the Ellenders an opportunity to prove what allocation between actual and punitive damages, if any, was agreed to when they settled with the other defendants. The issue is not what the par-

---

4. Notably, this Court has held that Texas Rule of Civil Procedure 11 applies to settlement agreements. *See Padilla v. LaFrance,* 907 S.W.2d 454 (Tex.1995); *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex.1984). Accordingly, the plaintiff may either offer a written and signed settlement agreement into the record, or the agreement may be made in open court and entered of record. *See* Tex.R. Civ. P. 11. An allocation completed in either form is enough to meet the plaintiff's burden of proof.

ties would have agreed to, but what if anything they did agree to. The trial court should allow the Ellenders to prove allocation through extrinsic evidence. Furthermore, our holding limiting plaintiffs' ability to prove allocation to that which is expressly stated in a valid settlement agreement applies to all cases in which a valid settlement agreement is reached on or after May 8, 1998, and to all other cases currently in the judicial process in which the issue has been preserved. For valid settlements agreements reached before May 8, 1998, plaintiffs can prove through extrinsic evidence whether, when the settlement was reached, the parties allocated between actual and punitive damages.

## VI. CONCLUSION

We affirm the court of appeals' holding that there is legally sufficient evidence to support the trial court's judgment against Mobil for gross negligence. We affirm the court of appeals' factual sufficiency review of the punitive damages award. We reverse the court of appeals' erroneous $91,555.58 award in extra punitive damages, and its denial of settlement credit. In the interest of justice, we remand the case to the trial court and instruct the court to afford the Ellenders an opportunity to prove whether there was any allocation between actual and punitive damages in the settlement agreement. We further instruct the trial court to grant a settlement credit in accordance with this opinion, to recalculate punitive damages, excluding the estate's actual damages, and to recalculate prejudgment interest.

OWEN, Justice, did not participate in the decision.