**TEXAS CAPITAL SECURITIES, INCORPORATED, et al., Appellants,**

v.

**J.D. SANDEFER, III, and Stephen F. Smith, Appellees.**

**No. 06–02–00042–CV.**

Court of Appeals of Texas, Texarkana.

Submitted June 26, 2003.

Decided June 27, 2003.

Rehearing Overruled July 22, 2003.

James D. Pierce, Houston, for Appellants.

Patrick A. Zummo, Zummo, Mitchell & Perry, Houston, for Appellees.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Justice WILLIAM J. CORNELIUS (Retired).

Texas Capital Securities, Incorporated, et al., (hereafter Texas Capital), appeals the trial court's denial of its motion to deem a liability judgment satisfied. The issue presented is whether a joint tortfeasor is entitled to a credit for the amount of a postjudgment, bankruptcy court settlement between the plaintiff and a codefendant. Texas Capital asked the trial court to reduce the liability award against it by the amount of the bankruptcy settlement between the plaintiffs and one of Texas Capital's co-defendants in the underlying cause of action. The trial court refused.

We initially reversed the trial court's judgment and remanded the case for further proceedings. *See Tex. Capital Sec., Inc. v. Sandefer,* No. 06-02-00042-CV, 2003 Tex.App. LEXIS 2513 (Texarkana Mar. 26, 2003, no pet. h.). Texas Capital has filed a motion for rehearing in which it asks us to render judgment rather than remanding the case for further consideration by the trial court. We grant the motion for rehearing, withdraw our opinion

---

* William J. Cornelius, Chief Justice, Retired,    Sitting by Assignment

dated March 26, 2003, and, for the reasons set forth below, we reverse the trial court's judgment and render judgment for Texas Capital as set out herein.

J.D. Sandefer, III, and Stephen F. Smith (collectively referred to as Sandefer) bought stock in Titan Resources, Inc., at the urging of Stephen Johnson, a stockbroker for Texas Capital. The price of the Titan stock eventually plummeted, and Sandefer sued Titan, Texas Capital, Johnson, and Butch Ballow (a stock promoter who worked with Johnson to sell the stock) for common-law and statutory fraud. Sandefer's petition alleged the defendants knowingly and recklessly made false and material representations intended to persuade Sandefer to buy the stock. Sandefer further alleged that the defendants violated the Texas Securities Act. Defendants Johnson and Titan settled out of the suit before trial. *Tex. Capital Sec., Inc. v. Sandefer,* 58 S.W.3d 760, 767–68 (Tex. App.-Houston [1st Dist.] 2001), modified by No. 01–99–01238–CV, 2001 Tex.App. LEXIS 5004 (Houston [1st Dist.] July 26, 2001, pet. denied) (op. on reh'g).

At trial, the jury ruled against the remaining defendants, finding Texas Capital and Ballow had defrauded Sandefer. *Tex. Capital Sec., Inc. v. Sandefer,* 58 S.W.3d at 768. The jury held all four defendants jointly and severally liable for the amount of Sandefer's stock purchases totaling $359,063.25. *Id.* The jury also found Texas Capital solely liable for $61,000.00 in attorney's fees and $77,287.01 in prejudgment interest. Additionally, Ballow was found solely liable for $8,000,000.00 in punitive damages, plus postjudgment interest. The First Court of Appeals affirmed the judgment on direct appeal. *Id.* at 780.

Almost two years after the securities fraud judgment, Ballow settled his obligations to Sandefer in federal bankruptcy court. In the settlement, Ballow agreed to (1) pay Sandefer's attorney's fees and legal costs, (2) make an initial $600,000.00 payment, and (3) issue a promissory note secured by real property deeds to be held in trust by the bankruptcy court for the remainder of the settlement amount. The bankruptcy settlement did not state whether the settlement represented payment for punitive damages or fulfillment of Ballow's joint obligations with Texas Capital.

Texas Capital subsequently filed a motion with the state trial court asking it to reduce Texas Capital's liability for the judgment by the amount of Ballow's bankruptcy settlement with Sandefer. The trial court denied the request; Texas Capital appealed. The Texas Supreme Court subsequently transferred the appeal of the matter to this Court. *See* Tex. Gov't Code Ann. §§ 73.001–.003 (Vernon 1998 & Supp.2003).

■ A trial court's determination of the existence of, or the amount of, a settlement credit is reviewed for an abuse of discretion. *Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486, 504 (Tex.App.-Texarkana 2002, pet. denied).

Sandefer argues that Chapter 33 of the Texas Civil Practice and Remedies Code controls, and under the applicable provisions of that chapter, Texas Capital is not entitled to a settlement credit because the settlement was effectuated after the charge was submitted to the jury. On the other hand, Texas Capital contends it should be discharged from its entire obligation based on the "one satisfaction rule."

■ First, Chapter 33 does not apply in this case. Section 33.002 sets forth the applicability, and it provides that Chapter 33 applies only to "any cause of action based on tort in which a defendant, settling person, or responsible third party is

found responsible for a *percentage of the harm for which relief is sought.*" TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a) (Vernon Supp.2003) (emphasis added). Texas Capital and Ballow were held jointly and severally liable; therefore, by its express terms, Chapter 33 is not applicable.[1]

Second, under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 391 (Tex.2000); *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 927–28 (Tex. 1998); *Buccaneer Homes of Ala., Inc. v. Pelis,* 43 S.W.3d 586, 589 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The nonsettling defendant is entitled to *offset any liability for joint and several damages* by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d at 391–92. Before the trial court may award a settlement credit, however, the nonsettling defendant must prove the settlement credit amount. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d at 927. To meet that burden, the nonsettling defendant may introduce the settlement agreement, or some other evidence, into the record showing the settlement amount. *Id.* The burden then shifts to the plaintiff to tender a valid settlement agreement demonstrating what portion of the settlement was intended to satisfy actual damages and what was intended to be allocated toward nonsettlement credit damages. *Id.* at 928. If the settlement agreement fails to show which amounts were designated for settlement credit and nonsettlement credit damages, the nonsettling party is entitled to a credit equaling the entire settlement amount, not exceeding the amount in which the settling and non-settling defendants were held jointly and severally liable for actual damages. *Id.* (when settlement agreement does not allocate between actual and punitive damages, requiring a nonsettling party to prove the agreement's allocation before receiving a settlement credit not only unfairly penalizes the nonsettling party but also allows settling parties to abrogate the one satisfaction rule).

In the underlying case here, Texas Capital and Ballow were held jointly and severally liable for $398,904.38 in actual damages, and that sum was to bear interest at the rate of ten percent per annum from the date of the judgment until paid. After the judgment was entered, Ballow settled with Sandefer, agreeing to pay the principal sum of $2,600,000.00, and Texas Capital presented this settlement agreement to the trial court.[2] Further, J.D. Sandefer stated in his affidavit that, at the time this proceeding reached the trial court, Ballow had paid $1,123,763.23 of the $2.6 million settlement. The settlement

---

1. Further, even if Chapter 33 were applicable, it does not preclude a settlement credit merely because settlement was effectuated after the case was submitted to the jury. Under the provisions set forth therein, a codefendant who settles after the case has been submitted to the jury is no longer considered a settling person. TEX. CIV. PRAC. & REM.CODE ANN. § 33.011(5) (Vernon 1997). However, this merely affects the manner in which a settlement credit is administered. If a party settles post-submission, the nonsettling defendant is entitled to a credit based on Section 33.013, as opposed to the formula provided in Sections 33.012 and 33.014 for presubmission settlements. TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.012–.014 (Vernon 1997); *Knowlton v. United States Brass Corp.,* 864 S.W.2d 585, 596–98 (Tex.App.-Houston [1st Dist.] 1993), *aff'd in part and rev'd in part on other grounds,* 919 S.W.2d 644 (Tex.1996).

2. Ballow was also held personally liable for an additional $8,000,000.00 in punitive damages.

agreement, however, did not allocate between the actual damages for which Texas Capital and Ballow were held jointly liable and the punitive damages for which Ballow was held personally liable. As a result, Texas Capital is entitled to a settlement credit not to exceed $398,904.38, plus post-judgment interest, which represents the actual damages for which Texas Capital and Ballow were held jointly and severally liable. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d at 927–28; *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d at 391–92 (nonsettling defendant is entitled to offset any liability for joint and several damages).

For the reasons stated, we reverse and render judgment as set out above. Texas Capital remains liable to Sandefer for the amount of damages for which it was held solely liable.