**Affirmed and Memorandum Opinion filed April 25, 2023.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-22-00236-CV

### CHASE MICHAEL RICHARD, Appellant

### V.

### CHASE LANGSTON WIATT, Appellee

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2017-51540**

## M E M O R A N D U M   O P I N I O N

In this personal-injury case arising from a motor-vehicle accident, plaintiff Chase Richard appeals the trial court's (a) grant of directed verdict eliminating Richard's gross-negligence claim, and (b) denial of Richard's motion for judgment notwithstanding the verdict to increase the award of past medical expenses. We affirm.

# I. BACKGROUND

On a Saturday afternoon in September 2016, appellant Chase Richard was stopped in traffic when his vehicle was struck from behind by a car driven by appellee Chase Wiatt. The impact pushed Richard's car into a car driven by Karen Punia, who, like Richard, had stopped for traffic. Witness Dalton Hernandez stated that about a minute before the accident, he had been driving next to Wiatt when Wiatt, who was looking down at his phone, had begun to drift into Hernandez's lane. Hernandez said that he honked at Wiatt but failed to get Wiatt's attention. Hernandez stated that Wiatt had been driving faster than Hernandez, but about a minute later, "maybe [Wiatt] slowed down some," because Hernandez was approximately next to Wiatt again when the accident occurred. According to Hernandez, Wiatt was looking down at his phone at this time as well. Wiatt later testified that he had been looking at his phone for directions.

Richard declined ambulance transportation at the scene but traveled on his own to Memorial Hermann Northeast Hospital, where his leg and cervical spine were x-rayed. There were no abnormal findings, and Richard was told to follow up with his primary-care physician.

Richard then retained an attorney who recommended a number of health-care providers to Richard, including AD Hospital East and Beyer Chiropractic. AD Hospital East repeated the x-rays of Richard's leg and performed a cervical CT scan. Unidentified services also were rendered by Advanced Diagnostics and Progressive Medicine Associates. The evidence at trial included billing records from Memorial Hermann Northeast Hospital, AD Hospital East, Beyer Chiropractic, Advanced Diagnostics, and Progressive Medicine Associates, but no other medical records. Richard testified, however, that the x-rays and CT scan were normal, and that records from AD Hospital East reported that the accident had no effect on his activities of

2

daily living, his emotions, or his mental status, and that the records further stated his range of motion was painless and within normal limits. Richard testified, however, that he did experience pain as a result of the accident.

Beyer Chiropractic referred Richard to Elite Health Services for magnetic resonance imaging of Richard's cervical and lumbar spine. The MRIs revealed five mild disc herniations: two to Richard's cervical spine and three to his lumbar spine. The MRI results did not prompt any further treatment recommendations, and Richard saw the chiropractor just once more after the MRIs were completed.

Richard sued Wiatt for negligence and gross negligence, but the trial court granted Wiatt's motion for directed verdict on Richard's gross-negligence claim. Richard's negligence claim was submitted to a jury, and although Richard asked to recover the total of his past medical bills, which amounted to $31,168.90, the jury found that Richard's reasonable expenses for necessary medical care in the past was only $15,584.45—exactly half of the amount requested. The jury assessed damages of $12,000.00 for physical pain in the past but assessed no damages for mental anguish, physical impairment, or future physical pain.

Richard moved for judgment notwithstanding the verdict, asking the trial court to increase the award for past medical expenses to $31,168.90, but the trial court denied the motion and rendered judgment on the jury's verdict.

In two issues, Richard argues that the trial court erred in (a) rendering a directed verdict eliminating Richard's claim for gross negligence, and (b) denying Richard's motion for judgment notwithstanding the verdict as to Richard's past medical expenses.

## II. Gross Negligence

In most civil cases, a plaintiff must prove his claims by a preponderance of the evidence. In such cases, we review a trial court's grant of directed verdict de novo by applying the same well-established legal-sufficiency standard under which we review no-evidence summary judgments. *See City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022). But, gross negligence must be proved not merely by a preponderance of the evidence, but by "clear and convincing evidence." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3)). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE § 41.001(2). And when the standard of proof in the trial court is elevated, the standard of appellate review is likewise elevated. *See Columbia Med. Ctr.*, 271 S.W.3d at 248. Thus, to review the legal sufficiency of the evidence supporting a claim that must be proved by clear and convincing evidence, we look at all of the evidence in the light most favorable to the claimant to determine whether a reasonable trier of fact could form a firm belief or conviction that the claim is true. *See id.* If a reasonable factfinder could not form such a firm belief or conviction, then there is legally insufficient evidence to support the claim. *See id.*

Gross negligence is an act or omission (a) that "when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others"; and (b) "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11). To establish the first, objective component, the plaintiff must prove that the defendant's conduct made serious injury

4

likely. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam). To satisfy the second, subjective component, the plaintiff must prove that the defendant was actually aware of the extreme risk but did not care. *See id.*

Our review of a directed verdict is not limited to the grounds identified by the trial court as the basis for its ruling. *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 387 (Tex. App.—Houston [14th Dist.] 2017, no pet.). But because Wiatt moved for directed verdict on the ground that there was no evidence of the second, subjective component of gross negligence, we will begin our review there and we will assume, without deciding, that the objective component of gross negligence has been satisfied.

Richard gives several evidentiary reasons for his conclusion that there was legally sufficient evidence of the subjective component of gross negligence, and he cites three cases in support of his argument. We conclude, however, that the evidence Richard cites, taken individually or cumulatively, is insufficient to allow a reasonable factfinder to form a firm belief or conviction that when Wiatt chose to look at his phone for directions, he had actual, subjective awareness that doing so involved an extreme degree of risk and that he nevertheless acted with conscious indifference to the rights, safety, or welfare of others. We further conclude that the cases on which Richard relies are readily distinguishable.

## A.    The Conduct at Issue

Because it is repeated several times in Richard's appellate briefing, we begin by pointing out a flaw in Richard's characterization of the evidence identifying Wiatt's conduct that allegedly involved an extreme degree of risk. Richard states several times that Wiatt had been looking at his phone "for a full minute" before the accident, and he considers the act or omission at issue to consist of Wiatt's driving while "looking at his phone for a full minute without looking up."

5

In fact, Hernandez testified that he saw Wiatt looking down at his phone on two occasions: once about a minute before the accident, and a second time when the collision occurred. But there is no evidence as to how long Wiatt looked at his phone. Hernandez emphatically denied watching Wiatt throughout the minute separating those two occurrences, saying, "Oh no, I was definitely paying attention to the traffic because we were all coming to a stop or the traffic was stopped and then I was coming to a stop." One cannot reasonably infer that Wiatt continued looking at his phone for an entire minute, because it is at least as likely that he did not do so, and "[a]n inference is not reasonable if it is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015). Thus, the act or omission at issue is Wiatt's conduct in looking at his phone for directions while driving, not in looking *exclusively* at his phone for a full minute while driving.

## B.     Sergeant Michael Hayward's Testimony

The first evidentiary reason Richard gives for challenging the directed verdict is drawn from the testimony of Sergeant Michael Hayward of the Harris County Sheriff's Office. Hayward was a patrolman in September 2016, and he came upon the accident within minutes after it occurred. Hayward spoke with all three drivers involved in the accident, and at trial he was asked to state his impression of Wiatt. Hayward answered,

> The impression I got of him I think he knew he had done something wrong by not paying—at least not paying attention or being distracted. He was evasive, and like I said earlier, belligerent in the way—his demeanor towards me. When I asked him a question, he wouldn't want to answer it at first.

This statement is not probative of gross negligence for at least two reasons.

First, to establish the subjective component of gross negligence, we examine the risk "prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr.*, 271 S.W.3d at 248. Sergeant Hayward testified only as to his belief that Wiatt knew *after* the accident that he had done something wrong, to which Hayward adds his own speculation about the reason for Wiatt's consciousness of wrongdoing. Although circumstantial evidence may suffice to prove either element of gross negligence,[1] the evidence must do "more than create a mere surmise or suspicion of its existence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Hayward's statement fails that test.

Second, evidence of simple negligence is insufficient to prove gross negligence,[2] but the quoted testimony offers no basis on which to distinguish gross negligence from simple negligence. Because a person who has caused an accident has "done something wrong" even if the person's acts were simply negligent, Hayward's testimony is not probative of the greater culpability required for gross negligence. *See* TEX. R. EVID. 401; *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004).

## C.    Wiatt's Statements and Testimony

Richard's remaining evidentiary arguments rely on Wiatt's deposition testimony[3] or Hernandez's testimony about a statement that Wiatt made at the scene of the accident. But what is missing from all of the testimony on which Richard relies is evidence that Wiatt was subjectively aware that looking at navigational directions

---

[1] *Boerjan*, 436 S.W.3d at 311 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).

[2] *Ellender*, 968 S.W.2d at 921.

[3] Wiatt was not present at trial, but excerpts from his deposition were read to the jury.

on his phone while driving created an extreme degree of risk that he chose to disregard. The cited testimony is as follows:

When asked if he was using his phone at the time of the collision, Wiatt said, "No, ma'am. I was—I was trying to get to where I was going. I glanced at the phone, but it wasn't—I wasn't just looking at the phone. It wasn't the cause of it." He later elaborated, "I was looking at my phone to see where I was going to try to reroute because I sit there about 20 minutes, so I was trying to figure the neighborhood to cut through to go back around." Richard argues that these statements show that Wiatt was "self-focused" in that Wiatt wanted "to avoid being forced to wait for others in traffic." But, this is evidence only of the reason Wiatt was looking at driving directions—that is, to avoid congested traffic. It says nothing about whether Wiatt was subjectively aware that doing so while driving made serious injury likely.

Richard next points to evidence that Wiatt was asked if Richard did anything to contribute to the accident, and Wiatt responded that Richard slammed on his brakes, going from "[a]bout 40 to zero real quick on me." When Wiatt was asked why he did not tell this to Hayward, the officer who arrived at the scene, Wiatt said, "I was just worried about my vehicle" because Wiatt was driving "a loaner vehicle from the dealership." Hernandez, too, testified that when Wiatt got out of the car, Wiatt "was saying something along the lines [of] 'I'm going to get in trouble, this isn't even my car, it's a rental, I'm in this rental because I just wrecked my car not too long ago.'" Richard states that even though Wiatt had recently been involved in a car accident, Wiatt's "primary focus was on the possible consequences he might face rather than the injuries of others."

But there are several problems with Richard's reliance on this testimony as well. As with the prior example, this evidence does not suggest that Wiatt knew, *before* the accident, that looking at his phone for directions made serious injury

8

likely. Indeed, it was not established at the scene that anyone had been seriously injured. Hayward called an ambulance to the scene as a precaution, but no one needed emergency transportation. Hayward further testified that he characterizes a collision resulting in injuries as a "major accident," but he considered this a "minor accident." Hayward additionally stated in his police report that there were no injuries. Even after Richard was examined in an emergency room later that day, and again five days later, no injuries were identified. The cited evidence shows only that Wiatt was concerned after the accident about the damage to the car he had been driving, but such concerns were not unique to Wiatt; Hayward testified that Punia, too, was "worried about her car" after the accident.

Finally, Richard cites the following exchange from Wiatt's deposition:

Question: "Okay. Do you take any responsibility for this collision?"

Answer: "I'm usually the guy that always says it's my fault, so I guess one, a percentage would say yeah, somewhat; but at the same time when you're driving down the road and it goes 40 to zero like that, you know what I mean, it's my fault but at the same time it's not all my fault here. People do have accidents, but at the same time—I mean, going from 40 to zero, people are slamming on their brakes, you know. Maybe they will get enough wrecks there one day and they will fix it, you know, because it happens every Saturday. I guarantee you tomorrow there will be a wreck in that same spot. It happens every weekend there."

Question: "So when you say it happens, what are you referring to?"

Answer: "I'm saying wrecks. The same—the same exact thing because it's two lanes and it's 60 to 70,000 people there in two lanes. You know, so, I mean, it's hard. It's busy. People out, it's going to keep happening with other people. It's a common mistake. It's not I'm over here Charles Manson, I'm just a bad guy here, no, it happens. People get in accidents and people hit each other's car. They work things out."

Richard argues that this exchange demonstrates that Wiatt had knowledge of what he considered a dangerous road design. But, the exchange demonstrates only that Wiatt knew by the time of his deposition that there were collisions in that

9

location every Saturday; the exchange does not indicate that he had the same knowledge about this stretch of road before the accident.

## D. Federal Cases Cited by Richard

Richard maintains that three unpublished cases from federal district courts have concluded that evidence similar to the evidence in this case raised a fact issue on a driver's subjective awareness of an extreme degree of risk. We are not bound by these decisions,[4] and given that the cited cases concern facts very different from those before us,[5] we do not find them persuasive.

## E. Conclusion

The subjective component of gross negligence is not established by proof of mere "momentary thoughtlessness, inadvertence, or error of judgment." *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 325–26 (Tex. 1993) (quoting *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981)). But that is all we have here. Because the evidence is insufficient to support a firm belief or conviction that Wiatt had actual subjective awareness that his conduct made serious injury likely, we

---

[4] *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

[5] *See, e.g.*, *Lara v. Power of Grace Trucking, LLC*, No. PE:20-CV-00010-DC-DF, 2021 WL 7184245 (W.D. Tex. Oct. 4, 2021) (no cell phone involved; commercial driver (a) was not licensed to drive in this country; (b) claimed in his job application to have extensive experience though he had none; (c) made an illegal u-turn on a highway in the dark, blocking both lanes of traffic where the speed limit was 75 miles per hour; (d) fled the scene and asked supervisor and employer to lie about his name to police officers; (e) was indicted for criminally negligent homicide and failure to render aid; and (f) failed to appear at his deposition); *Alpizar v. John Christner Trucking, LLC*, No. SA-17-CV-00712-FB, 2019 WL 1643743, at *5 (W.D. Tex. Apr. 16, 2019) (commercial driver (a) had a history of unsafe driving (b) made forty calls from his cell phone that day; and (c) was making a cell phone call at the exact time the accident occurred); *Braun v. Clean Harbors Envtl. Servs., Inc.*, No. 1:14-CV-524, 2016 WL 7551118, at *5 (E.D. Tex. Jan. 22, 2016) (commercial driver (a) had a history of safety violations, (b) was driving solo without approval to do so, (c) had received training materials warning of the increased risks from driving while using a cell phone, and (d) was talking on his cell phone when the accident occurred).

conclude that the trial court did not err in granting a directed verdict on Richard's gross-negligence claim. We overrule his first issue.

### III. PAST MEDICAL EXPENSES

In his second issue, Richard contends that, notwithstanding the jury's verdict that his reasonable expenses of necessary medical care in the past amounted to $15,584.45, the trial court erred in failing to render judgment doubling that amount.

When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which he bore the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). Thus, a party with the burden of proof at trial is entitled to judgment notwithstanding the verdict on a particular issue only if the evidence conclusively establishes the issue in that party's favor as a matter of law.

To prove his past medical expenses, Richard relied on medical affidavits pursuant to Texas Civil Practice and Remedies Code section 18.001(b). Under the applicable version of that provision, an uncontroverted "affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is *sufficient* evidence to support a finding of fact . . . that the amount charged was reasonable or that the service was necessary." Act of Apr. 4, 2013, 83d Leg., R.S., ch. 560, § 1, 2013 TEX. GEN. LAWS 1507, 1507 (amended 2019) (emphasis added). Although an uncontroverted affidavit is *sufficient* evidence of reasonableness and necessity, it is not *conclusive* evidence of reasonableness and necessity. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 881 (Tex. 2021) (orig. proceeding). Moreover, such an affidavit is not sufficient to establish that the defendant caused the injuries for which the medical expenses were

paid or incurred. *See Gunn v. McCoy*, 489 S.W.3d 75, 102 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018).

The jury reasonably could have concluded that Richard failed to meet his burden to prove that all of the medical expenses he incurred were the result of the accident and were reasonable and necessary. *See Gunn v. McCoy*, 554 S.W.3d 645, 664–65 (Tex. 2018) ("[I]t is the province of the jury to determine which evidence to credit . . . ."). We must defer to that determination. *See Gen. Growth Props., Inc. v. Prop. Tax Mgmt., Inc.*, 614 S.W.3d 386, 390 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("[W]e defer to the jury's reasonable credibility determinations."). Because Richard did not conclusively establish, as a matter of law, that the entire $$31,168.90 he sought for past medical expenses were reasonable and necessary and were incurred as a result of the accident, the trial court did not err in denying his motion for judgment notwithstanding the judgment.

We overrule Richard's second issue.

### IV. CONCLUSION

Having overruled both of Richard's appellate issues, we affirm the trial court's judgment.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.

12