In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00180-CR
______________________________


TERRANCE LAMONT LIPSCOMB, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31235-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Terrance Lamont Lipscomb appeals the trial court's denial of his motion to suppress
evidence. The issues Lipscomb raises in this appeal are identical to those he presents in Lipscomb
v. State, No.Â 06-04-00175-CR. Since the arguments presented are identical in each appeal, for the
reasons stated in Lipscomb v. State, No. 06-04-00175-CR, we affirm the trial court's judgment in this
case.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â July 12, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 31, 2005

Do Not Publish



 of the vital fact. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 

 Brown & Root argues there is no evidence that Brown & Root, the corporation, acted with
malice. Chapter 41 of the Texas Civil Practice & Remedies Code, which deals with exemplary
damages, defines malice as





 (7) "Malice" means:


 (A) a specific intent by the defendant to cause substantial injury to the
claimant; or 


 (B) an act or omission: 


 (i) which when viewed objectively from the standpoint of the actor at the
time of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and


 (ii) of which the actor has actual, subjective awareness of the risk involved,
but nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7)(B) (Vernon Supp. 2003). This definition includes
objective and subjective requirements. Objectively, the defendant's conduct must involve an extreme
risk of harm, a threshold significantly higher than the objective reasonable person test for negligence.
Celanese Ltd. v. Chem. Waste Mgmt., Inc., 75 S.W.3d 593, 599 (Tex. App.-Texarkana 2002, pet.
denied). Subjectively, the defendant must have actual awareness not just of a risk, but of an extreme
risk created by the conduct. Id. 

 The objective prong of malice requires an "extreme degree of risk," which is not a remote
possibility of injury or even a probability of minor harm, but rather the likelihood of serious injury
to the plaintiff. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001). The
subjective prong requires "actual awareness," which means the defendant knew about the peril, but
its acts or omissions demonstrated it did not care. Id. Additionally, circumstantial evidence is
sufficient to prove either prong of malice. Id. Evidence of malice is legally sufficient if, considered
as a whole in the light most favorable to the prevailing party, it rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Gen. Motors Corp. v. Sanchez, 997
S.W.2d 584, 595 (Tex. 1999). 

 Brown & Root's contention concerning malice is that the appropriate officer of Brown &
Root did not have malice. For a corporation to be held liable for exemplary damages, the acts or
omissions of the corporation itself must have been committed with malice. Mobil Oil Corp. v.
Ellender, 968 S.W.2d 917, 921 (Tex. 1998). The Texas Supreme Court holds that a corporation has
acted with malice and is liable for punitive damages if (1) the corporation itself commits the acts or
omissions with malice; (2) the corporation authorized or ratified an agent's malicious acts or
omissions; (3) the corporation is malicious in hiring an unfit agent; or (4) the corporation commits
malice through the actions or inactions of a vice principal. Id. at 921-22. Vice principal
encompasses: (a) corporate officers; (b) those who have authority to employ, direct, and discharge
servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of
the master; and (d) those in whom the master has confided the management of the whole or a
department or a division of the business. Id. at 922. 

 The facts and the legal points raised on appeal in the present case closely resemble those in
Mobil Oil Corp. v. Ellender; thus, the facts of Ellender are useful. Id. at 922-26. Mobil Oil was
sued by Ellender for injuries sustained from continued exposure to benzene. Id. at 920. Ellender
was a millwright at Mobil's refinery from 1963 to 1977; he was continually exposed to benzene at
work. Ellender was diagnosed with leukemia and died in 1989. Id. Ellender alleged Mobil was
negligent, grossly negligent, and malicious in: (1) failing to warn Ellender about his exposure to
benzene on Mobil's premises and the risks associated with it, and (2) failing to protect Ellender from
those risks. Id. The jury found Mobil's conduct was grossly negligent and malicious. Id. The Texas
Supreme Court affirmed. Id. 

 Like Brown & Root in the present case, Mobil asserted there was no evidence to support the
jury's verdict of malice. Id. Specifically, Mobil claimed there was insufficient evidence of "an
extreme risk" to Ellender of serious injury from benzene exposure. Id. However, the court found
there was evidence Mobil failed to warn contract workers about benzene exposure or protect them
from it. Id. Moreover, from Mobil's own viewpoint, it was recognized during the time Ellender
worked at Mobil there was an extreme degree of risk associated with benzene exposure. Id. There
is also evidence Ellender's exposure to benzene was dangerously high. Id. at 923. 

 Mobil asserted there was no evidence a vice principal's conduct involved an extreme degree
of risk to Ellender. Id. However, the Texas Supreme Court did not agree. The court found there
was evidence of Mobil's own acts and omissions involved an extreme degree of risk. Id. Mobil had
an "unwritten policy" not to monitor contract workers, and Mobil did not include any reference to
benzene or other chemicals in its 1967 pamphlet titled "Mobil Safety and Security Regulations for
Contract Workers." Id. 

 Mobil also argued there was insufficient evidence a Mobil vice principal knew of the extreme
risk. Id. at 924. Mobil's medical director from 1960 to 1983 testified he knew benzene caused
diseases, including aplastic anemia. Id. Additionally, samples from conditions similar to those in
Ellender showed excessive levels of benzene exposure. Id. Mobil also had a program "designed to
protect the health of those employees who handle benzene and benzene related products," that
directed doctors and hygienists to look for benzene exposure and provide protective gear. Id. The
Texas Supreme Court found that all of this constituted legally sufficient circumstantial evidence
Mobil vice principals knew that not providing protective gear and not monitoring or warning workers
about benzene exposure was an extreme risk to contract workers like Ellender. Id. at 924-25. 

 The present case is strikingly similar to Ellender. Brown & Root asserts that no vice
principal was responsible for malice. As for the objective prong of malice, Moore produced
evidence at trial it was common knowledge in the industry as far back as 1930 that asbestos products
posed a serious health risk. There was evidence it was accepted in 1949 that asbestos could cause
lung cancer, and asbestos was linked to mesothelioma in approximately 1960. Evidence was also
produced indicating the Texas regulations passed in 1958 and 1972 OSHA regulations regarding
asbestos exposure limits. In light of this evidence, it appears there is legally sufficient evidence that
Brown & Root's conduct, viewed objectively from Brown & Root's point of view when Moore
worked there, involved an extreme degree of risk to contract workers like Moore.

 The subjective prong of malice is where Brown & Root focuses its argument. Brown & Root
argues no vice principal acted with malice. However, Brown & Root asks this court to drastically
change the requirements to find a corporation liable for malice. There are several ways a corporation
can be held liable for malice, and only one of them requires action from a vice principal. In fact, the
Texas Supreme Court clarified this, stating, "A corporation is liable for punitive damages if it
authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent." 
Ellender, 968 S.W.2d at 921. The next sentence states, "A corporation is also liable if it commits
gross negligence through the actions . . . of a vice principal." Id. at 922 (emphasis added). 
Therefore, if a corporation ratifies or authorizes one of its agent's malicious acts or if an agent is
malicious in hiring an unfit agent, there is no requirement of action or involvement of a vice
principal. Id. 

 Moore produced evidence of Brown & Root's subjective knowledge of the hazards of
asbestos. Brown & Root knew the OSHA regulations related to asbestos exposure and applied 
them, and Brown & Root distributed an office memorandum regarding the OSHA regulations. Five
years after that memorandum, Brown & Root sampled the air at ten of its work sites for asbestos
monitoring, but no monitoring of Lone Star Steel was done. The OSHA regulations required
monitoring to begin six months after the regulations were passed in 1972, and there was evidence
Brown & Root did not begin monitoring until 1976. 

 There was also evidence Brown & Root circulated an interoffice memorandum regarding air
monitoring that noted the "enormous" cost for initiating such an examination program. Additionally,
there was testimony from two witnesses that cost considerations may affect decisions related to
safety. There was expert testimony that Brown & Root was in possession of sufficient information
to be able to anticipate in 1977 that workers in industrial settings may be exposed to asbestos. 

 Moreover, Brown & Root regularly contracted with Exxon and was Exxon's largest
contractor. In 1947, Exxon began requiring its workers to wear respirators to avoid asbestos
exposure. Exxon also created a safety manual containing its rules regarding the control of asbestos
dust and the requirement that its workers wear respirators. Exxon provided a copy of this safety
manual to the supervisors of its contractors before each job. In every job that Brown & Root
performed for Exxon after 1947, Brown & Root was required to follow Exxon's safety rules to
protect its workers from asbestos exposure. In addition to the safety manuals given to Brown & Root
supervisors, there is evidence of supplemental conversations explaining the precautions that should
be taken. If Brown & Root's employees failed to wear the required respirators, Exxon would shut
down the job. This evidence concerning Brown & Root's relationship with Exxon is circumstantial
evidence tending to establish Brown & Root's subjective knowledge of the dangers of asbestos.

 Furthermore, Brown & Root's health, safety, and environmental manager, John Hodges,
testified he had the most knowledge with respect to work performed by Brown & Root at Lone Star
Steel in the 1960's, 1970's, and 1980's. Hodges was aware that in the 1960's and 1970's, some
thermal insulation products that may have been used on pipes or furnaces contained asbestos. 
Hodges testified Brown & Root was aware of the OSHA requirements related to the asbestos
exposure. Hodges also acknowledged Brown & Root had an obligation to perform its work in a safe
manner and that included protecting other workers, such as Lone Star Steel workers who could have
potentially been injured by Brown & Root's work. Finally, Hodges acknowledged that if Brown &
Root installed or disturbed insulation at Lone Star and a Lone Star employee was injured because
of the work, Brown & Root would be responsible. 

 There was also testimony from Steven Paul Sellers, who was an industrial hygiene technician
for Brown & Root from November 1976 to April 1984. When Sellers was hired at Brown & Root
in 1976, the position was new. As an industrial hygiene technician, Sellers performed a variety of
functions, including air monitoring or air sampling. Sellers received on-the-job training and went
to a formal asbestos contractor course concerning the hazards of asbestos. Sellers testified he knew
Brown & Root was involved in the removal of asbestos-containing materials around the country. 
Sellers further testified that between 1977 and 1984, it was proper for an industrial hygienist to
assume that insulation already in place was asbestos-containing unless testing had been done to
confirm otherwise. Sellers knew in 1977 that asbestos was a hazardous substance and that it was
connected to some forms of cancer. Sellers stated that insulation removal required monitoring and
application of OSHA regulations. Sellers testified he performed air monitoring related to asbestos
on a variety of occasions, but there were many Brown & Root job sites that may have contained
asbestos he was not able to cover.

 Sellers further testified asbestos fibers can stay in the air for long periods of time and can
float in a wide area. There was also testimony from Sellers recognizing that the inhalation of
asbestos fibers is hazardous. Sellers acknowledged he would be concerned if he were to observe a
tear-out of asbestos and see that no protective mechanisms were being used. Sellers admitted that
a corporation's attitude could be described as indifferent if that corporation exposed its employees
or others to hazardous substances despite knowledge of the hazard and an understanding of the
regulations. 

 Testimony from former Brown & Root employees also established evidence of Brown &
Root failing to protect the workers at Lone Star Steel. James Hubert Jones was an employee of
Brown & Root and worked at Lone Star Steel from the 1970's to 1981; during that time, he worked
as a millwright, the same position as Robert Moore. Jones testified he was never told about the
dangers of asbestos or provided with any type of instructions on how to safely work with asbestos. 
Jones testified that to his knowledge, no air monitoring was ever done at Lone Star Steel. Moreover,
Brown & Root did not teach Jones how to decrease dust while he was working at Lone Star Steel. 
Jones stated he was not provided with respiratory protection from Brown & Root when he was
working around asbestos. Jones further testified Brown & Root did not put up any signs or rope off
areas where there may have been asbestos. There was no medical monitoring performed on Jones
for asbestos-related diseases. Finally, Jones testified that during his entire career working for Brown
& Root, Brown & Root never taught him to use any type of precautions regarding asbestos. 

 Additionally, there was testimony from Harold Vaughn, an employee of Brown & Root from
1954 to 1987; during that time, he was a project manager on the job at Lone Star Steel from
approximately 1972 to 1981. Vaughn was the "top man" or the highest ranking Brown & Root
supervisor at Lone Star Steel from 1972 to 1981. Vaughn supervised anywhere from fifty to 450
Brown & Root employees at Lone Star Steel. Vaughn testified he knew in the 1960's asbestos could
cause health problems. 

 Vaughn testified Brown & Root performed no air monitoring the entire time he worked there,
and it never placed any warning signs around asbestos products at Lone Star Steel. Vaughn further
testified he did nothing at the premises of Lone Star Steel to determine if there was asbestos present
when he began working there in 1972. Vaughn did not know whether refractory castable or block
insulation from the 1950's to the 1970's contained asbestos; these were the materials Brown & Root
worked on at Lone Star Steel. Vaughn then explained he would not be able to tell from any point
in time at Lone Star Steel whether the insulation being removed contained asbestos. 

 Evidence exists regarding Brown & Root's subjective knowledge of the risks associated with
asbestos and its failure to protect its employees and the workers at Lone Star Steel from those risks. 
Unlike the facts in Louisiana-Pacific Corporation v. Andrade, here, more evidence than a mere
absence of corporate policy was raised. 19 S.W.3d 245, 248 (Tex. 1999) (Andrade was told
electricity was turned off, but when he leaned against a metal rail of a crane, he received an electric
shock that caused permanent head injuries. There was no corporate policy regarding turning off the
electricity, but under the circumstances that alone did not support an inference of Louisiana Pacific's
subjective awareness.). Moreover, the Texas Supreme Court recognized that corporate policies or
lack of them can serve as a basis for gross negligence or malice. Id. In Mobil Oil Corporation v.
Ellender, the plaintiff produced evidence Mobil had a detailed policy of monitoring, testing, and
warning its own employees to protect them from risks associated with exposure to benzene, but did
not do so for contract workers. 968 S.W.2d at 924-25. The Texas Supreme Court concluded this
policy was legally sufficient evidence Mobil knew of the extreme risks associated with benzene
exposure, and despite this knowledge had an "unwritten practice or policy" of not warning or testing
contract workers, which permitted the jury to infer Mobil knew of the risks of benzene exposure yet
proceeded with conscious indifference toward the safety of the contract workers. Id. 

 Again, the facts in the present case mirror those in Ellender. Id. at 924-25. In Ellender, the
Texas Supreme Court found that evidence of knowledge of a dangerous risk coupled with not
providing protective gear or warning workers was legally sufficient evidence that the vice principals
engaged in malice. Id. at 925. Here, similar evidence exists to support the jury's finding Brown &
Root acted with malice. Brown & Root, when contracting with Exxon, proceeded with extreme
caution and protected workers possibly coming in contact with asbestos; however, Brown & Root
did not use these safety policies while working at Lone Star Steel. 

 The testimony from Brown & Root's health, safety, and environmental manager, Hodges,
indicated he was in the position to know the most about potential asbestos-contaminated work sites,
and he knew thermal insulation like that at Lone Star Steel could contain asbestos. There is further
evidence that despite Brown & Root's knowledge that asbestos could likely be in the pipes and
furnaces at Lone Star Steel, there was no monitoring or testing done to determine if in fact asbestos
was present, nor were any precautions taken such as warnings or distributing protective gear. 

 The circumstantial evidence substantiates that Brown & Root vice principals knew of the
risks concerning asbestos exposure, but still did nothing to warn or protect the workers at Lone Star
Steel. Evidence was also introduced that Vaughn, who was the Brown & Root supervisor at Lone
Star Steel, satisfies the requirements of a vice principal. Vaughn had the authority to direct Brown
& Root employees at Lone Star Steel, and Brown & Root confided in him to manage the entire
Brown & Root operation at Lone Star Steel. See Hammerly Oaks v. Edwards, 958 S.W.2d 387, 391
(Tex. 1997). This evidence was sufficient for the jury to find malice on the part of Brown & Root
through the actions of Vaughn, a vice principal. The jury could also have reasonably inferred that
Brown & Root, the corporation, acted with malice. Specifically, evidence was raised that Brown &
Root had subjective knowledge of the risks associated with asbestos but acted with conscious
indifference to the rights of the workers at Lone Star Steel.

 Having reviewed the evidence in a light most favorable to the jury's finding to determine if
Brown & Root had actual, subjective awareness of the risk involved, but nevertheless proceeded with
conscious indifference to the rights, safety, or welfare of others, we find the evidence was legally
sufficient to support the jury's finding of malice. Thus, Brown & Root's point of error is overruled.

 The judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: November 7, 2002

Date Decided: December 11, 2002


Publish