Affirmed in Part, Reversed and Remanded in
Part, and Memorandum Opinion filed February 24, 2011.

 

In
The

Fourteenth
Court of Appeals



NOS. 14-09-01005-CV       


          14-10-00197-CV



 

Robert Barnett
and Charlotte Barnett, Appellants

v.

Home of Texas
and Warranty Underwriters Insurance Company, Appellees



On Appeal from
the 412th District Court

Brazoria County, Texas

Trial Court
Cause No. 43646



 

MEMORANDUM OPINION 

After purchasing their home, Robert and Charlotte
Barnett experienced problems with its foundation.  They subsequently sued several
entities, including appellees Home of Texas and Warranty Underwriters Insurance
Company, the providers of the Barnetts’ home warranty.  Against appellees, the
Barnetts alleged, among other things, fraud, breach of warranty, and violations
of the Texas Deceptive Trade Practices Act.  The case proceeded to trial,
during which the trial court granted appellees’ motion for directed verdict
against the Barnetts’ fraud claims.  The jury found for the Barnetts on most of
the liability issues submitted, including breach of warranty and violations of
the DTPA.  The jury also found actual damages, including mental anguish
damages, and concluded that the Barnetts were entitled to additional damages
because appellees committed certain of the DTPA violations knowingly.  The
trial court then granted appellees’ motion to disregard certain of the jury’s
answers, specifically those regarding mental anguish and knowing conduct.

On appeal, the Barnetts primarily contend that the
trial court erred in disregarding certain jury questions.  They contend in the
alternative that the trial court erred in granting a directed verdict against
their fraud issues.  In a cross-point, appellees challenge the legal and
factual sufficiency of the evidence to support one of the jury’s DTPA violation
findings.  Appellees further request that this court determine how to apply a
post-judgment settlement credit.  We modify the judgment and remand for
recalculation of prejudgment interest.

Background

The Barnetts bought a home in July 2000 from Gehan
Homes Ltd.  The home was located in a residential development established by
Beazer Homes of Texas, L.P.  The home warranty was provided by Home of Texas
and Warranty Underwriters Insurance Company (collectively “appellees”).[1]  Under the
terms of the warranty, appellees warranted the home against “major structural
defects” in years three through ten after the effective date, with Gehan warranting
the home for the first two years. For a “major structural defect” to exist
under the warranty, three conditions had to be met:  

a. actual physical damage to one or more . . . specified load-bearing
segments of the home; 

b. causing the failure of the specific major structural
components; and        

c. which affects its load-bearing function to the degree it
materially affects the physical safety of the occupants of the home.

Soon, the Barnetts began experiencing problems at the
home that included drywall cracking in the master bedroom, separation of the
bathroom vanity fixture from the wall, as well as drainage and other issues. 
They sought redress first from Gehan and subsequently from appellees.  In
November 2003, an independent contractor hired by appellees, D.L. Simpson, inspected
the home.  In his report to appellees, Simpson stated that he observed numerous
problems at the home, including “corner spall” (i.e., chipping or
fragmenting) at three corners of the foundation, brick veneer cracks, a gap in
one of the window placements, drywall cracks, the rear patio sloping toward the
house rather than away from it, and several doors sticking or not latching
properly.  Specifically regarding floor elevations found at the home, Simpson stated
as follows:

We noted elevation variance throughout much of the home
with a maximum change of about 2.8 inches in 18 feet, measured from the front
to the rear of the master bedroom.  In general, we consider differentials of
less than 1 inch in 10 feet to be acceptable.  The measured differential
exceeds that parameter.  When excessive differential settlement occurs,
foundation repairs are warranted.

Simpson additionally noted that the end of the pool
nearest the master bedroom appeared to be raised two inches above the other end
of the pool.[2] 
He speculated that there were three possible explanations for the floor “heave”
found in the master bedroom:  (1) the pool that was at least ten feet from the
foundation could be leaking, (2) a storm sewer that could be as close as three
feet from the foundation could be leaking, and (3) if one or more trees had
been removed from the area behind the bedroom, soil in the area could be
re-hydrating in the aftermath of their removal.  Simpson concluded that, based
on his inspection, there was no apparent “actual physical damage” to specified
load-bearing elements and no apparent failure of such load-bearing elements so
as to affect their load-bearing function.

On December 8, 2003, Home of Texas representative
Lorrie A. Stahl sent a letter to the Barnetts regarding Simpson’s inspection. 
In the letter, Stahl stated only that Simpson observed four doors that did not
function properly in the home.  She then stated that “Home of Texas (HOME) recommends that you take action that is deemed
necessary in order to correct the functionality of the listed component [sic].” 
The letter does not mention any other problems identified by Simpson in his
report.

Attached to the letter
was a “Warranty Coverage Report” also signed by Stahl.  This report, clearly
based on Simpson’s inspection, additionally referenced that “[w]edge chip
cracks were observed at three corners of the foundation,” the rear patio sloped
toward the home, and one end of the pool was raised above the other.  The
report further indicated that at the time of the inspection, “the criteria for
a Major Structural Defect, as defined by the Limited Warranty, had not been
met.”  Lastly, the report instructed the Barnetts that if they agreed with the
report, their coverage would remain in effect until 2010, but if they did not
accept the report, they could file for binding arbitration under the terms of
the warranty.  Also enclosed with the letter and report from Stahl was
information for homeowners on how to properly maintain a home foundation.  Evidence
at trial indicated that in 2007, the problems with the Barnetts’ home became
substantially worse, with the floor in the master bedroom noticeably heaving upward,
interior cracks expanding, and sheetrock falling off of walls.

The Barnetts sued numerous parties over the problems
with their home, including Gehan (builder and seller), Beazer (developer),
appellees (provider of the home warranty), and Horizon Pools and Landscape
(pool builder).[3] 
Against appellees, the Barnetts alleged, among other things, fraud, breach of
warranty, and various violations of the Texas Deceptive Trade Practices Act
(DTPA).  The Barnetts made similar claims against Gehan.  Prior to trial, the
Barnetts settled their claims against Beazer and Horizon Pools and Landscape. 
Also, prior to submission of the case to the jury, the trial court granted a
directed verdict on the Barnetts’ fraud claims against appellees.

In regards to appellees, the jury found that they
made negligent misrepresentations (jury question 1), breached the warranty
(question 4), engaged in false, misleading, or deceptive acts or practices
(question 9), and engaged in unconscionable conduct (question 11).  Against
Gehan, the jury found that it made negligent misrepresentations, committed
fraud, engaged in false, misleading, or deceptive acts or practices,[4] and engaged
in unconscionable conduct.  In response to multiple damages questions, the jury
found that the cost to make structural repairs to the home was $100,000 and the
cost of cosmetic repairs was $69,490.  The jury further awarded damages for the
Barnetts’ mental anguish in the sum of $50,000 (in response to a portion of
question 13).  In response to jury question 14, the jury found that appellees
engaged in certain conduct “knowingly.”[5] 
Based on this finding, the jury awarded additional damages of $169,490 (question
15).

In response to appellees’ motion for judgment
notwithstanding the verdict, the trial court disregarded the jury’s award of
mental anguish damages (a portion of question 13) as well as the jury’s award
of additional damages for knowing conduct (questions 14 and 15).  In its final
judgment, the trial court awarded the Barnetts $81,950 in actual damages jointly
and severally against appellees and Gehan.[6] 
The court further awarded the Barnetts attorney’s fees, costs, and pre- and
post-judgment interest.  After entry of judgment, Gehan settled with the
Barnetts for $45,000.  Appellees subsequently filed a motion for clarification,
notifying the trial court of the settlement.  However, there is no indication in
the record that the trial court ever considered the motion.

On appeal, the Barnetts challenge the trial court’s
disregarding of certain jury answers and contend, in the alternative, that the
trial court erred in granting appellees’ directed verdict as to fraud.  In a
cross-point, appellees challenge the legal and factual sufficiency of the
evidence to support one of the jury’s DTPA violation findings.  Appellees
further request that this court determine how to apply a post-judgment
settlement credit.

Purported Challenge

            In their first
two issues, the Barnetts purport to challenge the trial court’s disregarding of
jury questions 9 (“false, misleading, or deceptive act or practice”) and 11
(“unconscionable action or course of action”).  However, as appellees point out
in their brief, and the Barnetts acknowledge in their reply brief, the trial
court did not disregard these jury findings; to the contrary, these findings
formed the basis for the trial court’s judgment in the Barnetts’ favor. 
Because the trial court did not actually perform the action the Barnetts
complain of in their first two issues, these issues are summarily overruled.

Knowingly

In issues three, four, and five, the Barnetts contend
that the trial erred in disregarding the jury’s finding that appellees engaged
in certain conduct knowingly (question 14).   As mentioned above, the conduct at
issue was found by the jury in response to questions 9 and 11.  The import of
the knowingly finding is that it permitted the jury to assess additional
damages beyond actual damages.  See Tex. Bus. & Com. Code §
17.50(b)(1); CA Partners v. Spears, 274 S.W.3d 51, 72-73 (Tex.
App.—Houston [14th Dist.] 2008, pet. denied).  The jury assessed an additional
$169,490 against appellees based on their conduct having been committed
knowingly (question 15).  The Barnetts’ primary argument is that the evidence
was sufficient to support the jury’s knowingly finding.

We review a trial court’s order granting a motion to
disregard under the same legal sufficiency standard as no-evidence challenges
to the sufficiency of the evidence.  City of Keller v. Wilson, 168
S.W.3d 802, 823 (Tex. 2005).  Consequently, we will uphold the trial court’s
decision to disregard the jury’s finding only if the record contains no
evidence supporting the disregarded finding.  Mancorp, Inc. v. Culpepper,
802 S.W.2d 226, 227 (Tex. 1990).  If more than a scintilla of evidence supports
the finding in question, the jury’s verdict and not the trial court’s judgment
must be upheld.  Id. at 228.  In an apparent cross-point, appellees
contend that even if there was some evidence that they committed the conduct in
question knowingly, the jury’s finding was against the great weight and
preponderance of the evidence.[7] 
We consider this challenge to the factual sufficiency of the evidence under
well-established standards.  See Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761-62 (Tex. 2003).

As defined in the charge, “knowingly” means:

actual awareness, at the time of the conduct, of the
falsity, deception, or unfairness of the conduct in question or actual
awareness of the conduct constituting a failure to comply with a warranty.
Actual awareness may be inferred where objective manifestations indicate that a
person acted with actual awareness.

            Among the
evidence the Barnetts point to as demonstrating appellees acted knowingly are
Simpson’s inspection report he provided to appellees as well as the letter and
warranty coverage report appellees’ representative Stahl sent to the Barnetts
in denying coverage under the warranty.  As described in detail above,
Simpson’s report described numerous problems discovered at the Barnetts’ home,
including most notably that elevation differentials for the master bedroom floor
exceeded acceptable parameters.  Simpson further offered three possible causes
of the problems and stated that foundation repairs were needed.  However, in
her letter to the Barnetts, Stahl mentioned only that Simpson had discovered
that a few doors were not functioning properly and suggested the Barnetts
correct that problem.  Furthermore, in her coverage report, although Stahl
mentioned a few more details from Simpson’s inspection report, she did not
provide either the arguably most alarming portion of Simpson’s report (the
out-of-tolerance floor elevations), his speculation as to possible causes, or
his statement that foundation repairs were needed.

On the basis of this evidence, the jury reasonably could
have determined that appellees intentionally provided and emphasized certain
information (e.g., problems with doors) and omitted certain arguably more
important information (e.g., floor elevations, possible causes, and the
necessity of repairs) in a deliberate attempt to downplay the severity  of the
problems with the Barnetts’ home.  Thus, the jury’s finding in question 14 that
appellees acted knowingly was supported by legally and factually sufficient
evidence.  Accordingly, we sustain the Barnetts’ third, fourth, and fifth
issues and overrule appellees’ cross-point.  We reinstate the jury’s assessment
of additional damages in question 15.[8]

Mental Anguish

In their sixth issue, the Barnetts contend that the
trial court erred in disregarding the portion of the jury’s answer to Question
13 in which it found that $50,000 was a reasonable sum to compensate the
Barnetts for the mental anguish they suffered as a result of appellees’
actions.  In order to recover mental anguish damages, the Barnetts needed to
provide either (1) “direct evidence of the nature, duration, or severity of
[their] anguish, thus establishing a substantial disruption in [their] daily
routine;” or (2) other evidence of “a high degree of mental pain and distress
that is more than mere worry, anxiety, vexation, embarrassment, or anger.”  Parkway
Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995).  There must not only be
evidence of the existence of compensable mental anguish, there must also be
some evidence to justify the amount awarded.  Saenz v. Fid. & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).  The jury “cannot simply
pick a number and put it in the blank.”  Id.  

Here, the only evidence cited by the Barnetts in
support of the mental anguish finding was in the testimony of Robert Barnett. 
He testified that he was angry, that living in the house was difficult, and
that he felt that he had not protected his wife.  He said that the past three
years had been a nightmare and explained that the couple does not entertain
family in the home because their family only wanted to discuss the problems
with the house.  He further stated that he was embarrassed and that there was
no joy between the couple when they were in the home.  He indicated however
that the issue had not affected his sleep and acknowledged that he had not seen
a doctor regarding any issues relating to the home.

This testimony fell short of the “high degree of
mental pain and distress” envisioned in Parkway.  901 S.W.2d at 444
(indicating mere anger and embarrassment not enough to support monetary
recovery for mental anguish); see also Fifth Club, Inc. v. Ramirez,
196 S.W.3d 788, 797 (Tex. 2006) (holding that evidence was sufficient to
support mental anguish damages where plaintiff and plaintiff’s wife testified
that plaintiff “continued to be depressed, humiliated, non-communicative,
unable to sleep, and angry, continued to have headaches and nightmares, and
that his daily activities and his relationships with his wife and daughter
continued to be detrimentally affected almost two years after the incident”
made the basis of the lawsuit).  Further, the testimony did not demonstrate
that the mental anguish was such as to establish a substantial disruption in
the Barnett’s daily routine.  See Parkway, 901 S.W.2d at 444.  The facts
of this case also do not suggest the type of disturbing or shocking injuries that
permit an inference that mental anguish occurred as a result thereof.  See
id. at 445.  The trial court did not err in disregarding the jury’s verdict
on mental anguish damages.  We overrule the Barnett’s sixth issue.

Fraud

            In issues seven
and eight, the Barnetts challenge the trial court’s grant of a directed verdict
against their fraud claims as well as the court’s refusal to submit the fraud
claims to the jury.  The Barnetts present these two issues as alternative
arguments in the event this court were to reverse and render judgment against
their DTPA claims, on which the trial court’s judgment in their favor was based. 
Because we do not reverse the judgment on the DTPA violations and damages, we
need not address these alternative arguments.  Accordingly, issues seven and
eight are overruled as moot.

Cross-Point

            In their brief,
appellees appear to raise an additional cross-point challenging the factual
sufficiency of the evidence to support the jury’s response to question 9 (“false,
misleading, or deceptive act or practice”).[9] 
In considering this argument, it is important to note that all of the damages
found by the jury that were predicated on its answer to question 9 were also
predicated on its answer to question 11 (“unconscionable conduct”).  In other
words, the damages findings are supported by the liability findings in response
to both questions 9 and 11.  Thus, even if appellees are correct that the
evidence is factually insufficient on question 9, the damages are still
supported by the jury’s response to question 11, which appellees do not
challenge.  Because appellees’ challenge to question 9 would have no impact on
the court’s final judgment, such challenge is moot.  See, e.g., Britton v.
Tex. Dep’t of Crim. Justice, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st
Dist.] 2002, no pet.) (“[A]n appellant must attack all independent bases or
grounds that fully support a complained-of ruling or judgment.  If an appellant
does not, then we must affirm the ruling or judgment.”).  Accordingly, we
overrule appellees’ second cross-point.

Post-Judgment Settlement Credit

            Also in their
brief, appellees request that this court allocate a post-judgment settlement
credit.  Apparently, after final judgment was rendered in the court below and
after the trial court’s plenary power had expired, the Barnetts settled their
claims against Gehan Homes.  Appellees specifically request that this court
apply a settlement credit first towards the prejudgment interest incurred on
the judgment and then towards the actual damages awarded, and not toward the
attorney’s fees Gehan was ordered in the judgment to pay to the Barnetts.[10]

Appellees do not, however, cite to any authority authorizing
this court to make such an allocation of post-judgment settlement amounts. 
Appellees are not specifically complaining of any action the trial court took or
refused to take, and if they were, they failed to preserve error in the trial
court.  See Tex. R. App. P. 33.1(a) (“As a prerequisite to presenting a
complaint for appellate review, the record must show that:  (1) the complaint
was made to the trial court by a timely request, objection, or motion . . . and
(2) the trial court:  (A) ruled on the request, objection, or motion, either
expressly or implicitly; or (B) refused to rule on the request, objection, or
motion, and the complaining party objected to the refusal.”).  Although
appellees filed a motion for clarification in the trial court, requesting the
trial court to comment on proper application of the settlement, the record does
not contain any indication that the trial court ever actually considered the
motion much less ruled on it.  To the contrary, appellees suggest in their
brief that the court could not have entertained the motion because its plenary
power had expired.

During oral argument before this court, counsel for
appellees indicated that their request for an offset was founded on chapter 33
of the Texas Civil Practice and Remedies Code.  However, counsel provided no
specific reference to any provision of that chapter, and nothing in that
chapter suggests that an appellate court may allocate settlement credits in the
absence of preservation of error.[11] 
In short, appellees have failed to establish their entitlement to have this
court allocate a credit for the Barnetts’ settlement with Gehan.  Their request
to do so is therefore denied.

Conclusion

                The
trial court erred in disregarding the jury’s finding of knowing conduct in
question 14 and its assessment of additional damages in question 15.  We reform
the judgment to award the additional damages as found by the jury and remand
for the recalculation of prejudgment interest.  

 

                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                            

                                                                                                /s/          Martha Hill
Jamison

                                                                                    Justice

 

Panel consists of Justices Brown, Boyce,
and Jamison.









[1]
In the warranty itself, Warranty Underwriters Insurance Company is defined as
the insurer and Home of Texas is defined as the administrator.  In the trial
court, the parties stipulated that any jury findings against Home of Texas
would also be considered findings against Warranty Underwriters.  In the jury
charge, the two parties were referred to collectively as “Home of Texas.”  No
distinction is made between the two in the appeal.





[2] Subsequent to purchasing
the home, the Barnetts contracted with Horizon Pools & Landscape, Inc. to
install an in-ground pool in the back yard.  

 





[3]
In their pleadings, the Barnetts named several apparently affiliated entities
for each defendant (builder, developer, pool builder, warranty provider).  It
is not necessary for purposes of this appeal to list or describe each entity
named in the lawsuit.





[4]
More specifically regarding the false, misleading, or deceptive acts or
practices, the jury found that appellees and Gehan (1) represented “that goods
or services had or would have characteristics and benefits that they did not
have”; (2) caused “confusion or misunderstanding about the source, sponsorship,
approval or certification of goods or services”; and (3) represented “that
goods or services are of a particular standard, quality or grade [when] they
[were] not.”  The jury, however, declined to find that appellees or Gehan had
represented “that a warranty confer[red] or involve[d] rights or remedies that
it [did] not have.” 





[5]
Question 14 was predicated on a positive response to either question 9 (false,
misleading, or deceptive acts or practices) or question 11 (unconscionable
conduct).  It defined “knowingly” as “actual awareness, at the time of the
conduct, of the falsity, deception, or unfairness of the conduct in question or
actual awareness of the conduct constituting a failure to comply with a
warranty.”





[6]
In the judgment, the trial court stated that it derived the $81,950 figure by
subtracting from the jury’s economic damages award of $169,450 a settlement
credit of $87,500.  As discussed above, the actual figure found by the jury for
economic damages was $169,490.  However, no party complains about this apparent
$40 discrepancy, so we will not address it further.





[7]
Although appellees did not properly delineate any cross-points, we will
consider all of their arguments in this appeal.





[8]
Appellees’ primary argument regarding issues three, four, and five was that the
Barnetts failed to properly cite to the record because they only cited large
swaths of record and did not lay out the import of those citations.  The
Barnetts, however, did specifically discuss the Simpson report in their
briefing, and in their reply brief, they provided specific citation to the
inspection report as well as the letter and coverage report from Stahl. 
Consequently, we consider these issues properly briefed.





[9]
This argument was not listed as a cross-point in appellees’ briefing but
instead was included in a section entitled “Counter-appellant’s [sic]
Argument.”





[10]
Although the damages were awarded jointly and severally against appellees and
Gehan, due to a stipulation entered into at trial regarding fees, the amount of
attorney’s fees awarded against each defendant was different.





[11]
It should also be pointed out that chapter 33 generally governs cases involving
“proportionate responsibility” among liable parties, wherein persons are held
responsible for percentages of the harm, and is generally not applicable to
cases such as the present one wherein two defendants were held jointly and
severally liable for the same damages.  See Tex. Civ. Prac. & Rem.
Code §§ 33.002(a), 33.012; Tex. Capital Sec., Inc. v. Sandefer, 108
S.W.3d 923, 925-26 (Tex. App.—Texarkana 2003, pet. denied).  But see
Tex. Civ. Prac. & Rem. Code § 33.013, 33.015 (describing particular
circumstances under which chapter 33 has application to parties held jointly
and severally liable).