

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00382-CV

———————————————

CCPA ENTERPRISES, INC. AND RICKEY CONRADT, Appellants

V.

BEDFORD HOSPITALITY INVESTMENTS, LLC D/B/A HOLIDAY INN - BEDFORD, Appellee

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-237051-09

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In this appeal from a bench-trial judgment, CCPA Enterprises, Inc.—a public insurance adjuster[1] owned by Rickey Conradt—asserts its entitlement to interpleaded funds as a matter of law based on its client's eventual settlement with its insurer. CCPA challenges how the trial court construed the adjusting contract's payment provision, contending that the provision entitled CCPA to ten percent of any settlement that its client, Bedford Hospitality Investments, LLC, ultimately made with the insurer regardless of the types of damages included in the settlement amount. But consistent with the trial court's determination, Bedford Hospitality argues that the contract entitled CCPA to be paid only if Bedford Hospitality recovered certain types of policy damages and that CCPA did not conclusively prove that Bedford Hospitality's recovery included those types. Because we agree with the trial court's construction of the contract, we affirm.

## I.  Factual and Procedural Background

The trial court signed extensive findings of fact the majority of which CCPA does not challenge, so we rely extensively on those findings for our background.

---

[1]A "public insurance adjuster" is a "person [including a corporation] who . . . acts on behalf of an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property." Tex. Ins. Code Ann. § 4102.001(3)(A)(i).

## A. The hailstorm and claims adjusting immediately following

Bedford Hospitality, the former owner of a hotel and real property in Bedford, Texas, purchased an insurance policy from Colony Insurance Company covering defined types of loss occurring from November 1, 2006, through November 13, 2007. The policy provided that if Bedford Hospitality incurred a covered loss to the structure or its business personal property, it could recover actual cash value for the damaged items, defined generally as the replacement cost minus depreciation. The policy also included business-interruption coverage (defined in the policy as "business income") and coverage for "extra expense."[2] Mold-damage coverage was excluded.

In April 2007, "severe weather and a catastrophic hail storm" damaged the hotel's roof and EIFS[3]; additionally, some rooms flooded. Bedford Hospitality filed a claim with Colony in July 2007. Colony retained an independent adjuster, who inspected the hotel in August 2007 and estimated the actual cash value of necessary repairs to be $127,990.10. Colony then issued Bedford Hospitality a check for that amount. Bedford Hospitality responded by filing a sworn proof of loss seeking an

---

[2]The policy defines extra expense from the insured's perspective as "necessary expense[] you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

[3]EIFS is an acronym for exterior insulation and finishing system. *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 895 (Tex. 2010).

additional $2,662,890.67 for the storm damage, but Colony rejected it subject to "further investigations concerning the issue of water penetration through the EIFS."

In September 2007, Bedford Hospitality[4] contracted with CCPA to adjust the "loss and damages by hail/wind" on its behalf. In the one-page contract form, which we reproduce at the end of this opinion, Bedford Hospitality "agree[d] to pay CCPA . . . ten percent (10%)* plus sales tax if applicable as agreed of the amount as adjusted of the replacement cost *recovered on account of* loss on structure, contents, business interruption, loss of use, [and] extra expense." [Emphasis added.] Above the underlined "ten percent" was handwritten, "To be paid 10% over 130,000.00 al[]ready paid." Following the description of the payment, the contract identified Bedford Hospitality's policy number and Colony as the insurer. Finally, next to an asterisk, the paragraph concluded, "The total commission payable to CCPA . . . may not exceed 10% of the amount of the insurance settlement. The sales tax is owed to the State of Texas, not to CCPA . . . ." Handwritten again was "over 130,000.00 al[]ready paid."

In late October 2007, the City of Bedford closed the hotel because unsafe amounts of mold were present indoors.[5]

---

[4]CCPA's Conradt provided the contract form and identified the insured as "HI WEST" because he said the Bedford Hospitality representatives told him to do so. But Bedford Hospitality has not tried to avoid contractual liability for that reason.

[5]Bedford Hospitality's lender eventually foreclosed on its lien and sold the hotel property in July 2009.

**B. Colony's suit for injunctive relief**

Dissatisfied with Colony's $127,990.10 payment, Bedford Hospitality sought to invoke the Colony policy's appraisal procedure. Colony refused, claiming that it was still investigating the cause of the water intrusion, and sought to inspect the property a second time. CCPA would not agree. Colony then sued Bedford Hospitality, and the two agreed to a "preliminary injunction" prohibiting Bedford Hospitality and its representatives from (1) continuing to pursue appraisal until further court order and (2) preventing Colony's access to the hotel property for inspections and testing.

Conradt later wrote to Colony's adjuster that he understood that the adjuster and an engineer had inspected the hotel. He also said that he had declined to attend that inspection because he thought his presence would be "counterproductive" to the appraisal process. Although Conradt noted that at that time he was still involved in adjusting the claim under the CCPA–Bedford Hospitality contract, CCPA did not perform any additional adjusting services for Bedford Hospitality after November 2007.[6] Colony nonsuited its claims after performing the additional inspections, and the trial court dismissed Colony's suit.

**C. Bedford Hospitality's suit against Colony**

After CCPA had stopped performing any adjusting services, Bedford Hospitality filed additional claims with Colony for business-personal-property loss

---

[6]The trial court found that Conradt and CCPA "abandoned their work on Bedford's claim in November 2007."

5

and business-interruption loss, also related to the water damage. Bedford Hospitality sued Colony in April 2009 (1) for breach of the insurance policy by failing to pay for damage to the hotel's contents and by failing to pay for remediation or rebuilding, (2) for violations of the Texas Deceptive Trade Practices Act, (3) for violations of the unfair-settlement-practices prohibitions in the Texas Insurance Code, and (4) for breach of the duty of good faith and fair dealing. Bedford Hospitality sought damages recoverable under the policy as well as other types of damages.

Four years into this second litigation, Bedford Hospitality moved to compel appraisal, which the trial court granted. Each party appointed an appraiser, and on the parties' joint motion the trial court appointed an umpire. Colony's appraiser and the umpire agreed to a final appraisal amount on "damages only," disclaiming any determination of causation, coverage, depreciation, or "any other legal matter" to be considered by the trial court in Bedford Hospitality's suit. The appraisal determination lists the following damages amounts:

Building Damages: $ 1,387,383.18

Mold Remediation: $ 705,362.52

Business Interruption[:] $ 706,686.48 (24 months at $29,445.27 per month)

Business Personal Property[:] $ 1,676,339.76

TOTAL DAMAGES: $ 4,475,771.94

Bedford Hospitality moved for an order accepting the appraisal amounts as binding. Instead, the trial court set the case for trial but also ordered the parties to mediation.

Bedford Hospitality and Colony eventually settled the suit for $4,750,000. The written settlement agreement acknowledged that Bedford Hospitality had alleged loss under the policy as well as extracontractual claims and that the parties disputed the amount of loss on all claims, including the extracontractual ones. The settlement agreement also recited that Colony denied "any and all liability in connection with" Bedford Hospitality's suit and that the parties were settling "to avoid further time, expense, and the uncertainties of litigation." The settlement obligated Colony to pay Bedford Hospitality $4,275,000 and to interplead an additional $475,000 into the trial court's registry for a potential claim by CCPA,[7] in exchange for Bedford Hospitality's release of all claims against Colony. But the agreement did not allocate a specific amount to any one damages category. The settlement agreement stated that it was "a final compromise of disputed claims and losses, not an admission of the existence of coverage by [Colony] . . . [,] an admission of liability [by Colony,] or an admission of any other fact or contention of law" by Colony. Bedford Hospitality also "den[ied] and refute[d] the validity of any claims made by CCPA . . . or . . . Conradt."

---

[7]Neither CCPA nor Bedford Hospitality disputes that Colony wanted to interplead ten percent of the total settlement.

**D. CCPA's and Bedford Hospitality's claims to the interpleaded funds**

After Colony served CCPA with its petition in interpleader, CCPA and Conradt asserted their entitlement to the interpleaded funds claiming, among other things, that Bedford Hospitality had breached the adjusting contract and that they were entitled to recover in quantum meruit. Bedford Hospitality asserted a competing entitlement to the interpleaded funds and counterclaimed for declaratory relief, breach of contract, chapter 10 sanctions, fraudulent inducement, and fraud. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006. The trial court granted summary judgment for Bedford Hospitality on Conradt's breach-of-contract claim, and CCPA and Conradt nonsuited their quantum meruit claims before trial. Thus, only CCPA's and Bedford Hospitality's dueling breach-of-contract claims and Bedford Hospitality's claims for sanctions, fraudulent inducement, fraud, and declaratory judgment went to trial.

The trial judge determined that Bedford Hospitality did not owe CCPA under the adjusting contract unless Bedford Hospitality had "[r]ecover[ed] . . . [r]eplacement [c]ost amounts as adjusted on account of loss on structure, contents, business interruption, loss of use, or extra expense . . . from Colony." The judge also determined that

- "because there was insufficient evidence of 'the amount as adjusted of the [r]eplacement [c]ost recovered on account of loss on structure, contents, business interruption, loss of use, or extra expense,'" neither Bedford Hospitality nor CCPA breached the adjusting contract, and

8

- neither the appraisal nor the settlement agreement between Colony and Bedford Hospitality provided "sufficient evidence of the amount of recovery provided by the plain words of the [c]ontract."

Accordingly, the trial court awarded the interpleaded funds to Bedford Hospitality. Although Conradt and CCPA both appealed the final judgment, only CCPA requests relief: that we reverse the trial court's judgment on its breach-of-contract claim and render judgment that CCPA is entitled to the interpleaded funds.

## II. No Briefing Waiver

As a preliminary matter, Bedford Hospitality contends that CCPA waived all its appellate complaints because it did not challenge the trial court's findings of fact in the trial court and raised "only . . . very limited challenges to specific" fact-findings and conclusions on appeal. But because this was a nonjury trial, CCPA can challenge the sufficiency of certain findings for the first time on appeal. *See* Tex. R. App. P. 33.1(d). That CCPA does not challenge each of the trial court's findings does not mean that it waived its right to challenge the specific findings pertinent to its complaints. *See id.* In any event, one of the primary findings CCPA challenges on appeal—that Bedford Hospitality's recovery attributable to certain types of losses was a prerequisite to its payment obligations under the contract—is a conclusion of law rather than a specific fact-finding. *See Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Thus, that "finding" is not binding on this court or on CCPA. *See, e.g., BMC Software Belgium, N.V. v.*

9

*Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). CCPA has thus not forfeited its appellate complaints.

### III. CCPA Did Not Prove Its Entitlement to Payment on Its Contract with Bedford Hospitality

In its first of four issues, CCPA argues that the trial court erred by awarding Bedford Hospitality the interpleaded funds because the evidence shows that Bedford Hospitality breached the contract as a matter of law and also conclusively establishes the amount of CCPA's damages. CCPA argues in its second issue that the trial court misinterpreted the contract as requiring it to show that Bedford Hospitality must have recovered from Colony amounts attributable to structural loss, personal-property loss, business interruption, loss of use, or extra expense before CCPA earned its commission. CCPA primarily contends that the contract entitled it to be paid a percentage of "any insurance settlement" between Bedford Hospitality and CCPA over $130,000 regardless of what types of damages the settlement amount comprised.

In these first two issues, CCPA challenges the trial court's construction of the contract's terms, a question of law if those terms are unambiguous. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999); *Rubinstein v. Lucchese, Inc.*, 497 S.W.3d 615, 625 (Tex. App.—Fort Worth 2016, no pet.). Neither CCPA nor Bedford Hospitality contends that the contract's terms are ambiguous.

Our goal in interpreting a contract is to ascertain the parties' true intent as expressed by the plain language they used. *See Great Am. Ins. v. Primo*, 512 S.W.3d 890,

10

893 (Tex. 2017). We examine the entire agreement to try to harmonize and give effect to all contractual provisions so that none will be meaningless. *MCI Telecomms.*, 995 S.W.2d at 652. In doing so, we give a contract term its plain and ordinary meaning unless the contract indicates the parties intended to give it a different meaning. *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 794–95 (Tex. 2012).

CCPA contends that the contract's plain language entitles it as a matter of law to ten percent of any insurance settlement recovered by Bedford Hospitality, no matter the types of damages involved. But the contract refers to a general "insurance settlement" only in the section limiting CCPA's commission to ten percent of "the insurance settlement."[8] In contrast, the sentence discussing payment and assigning a commission amount to CCPA is specific: CCPA's percentage commission must be calculated on "the amount . . . of the replacement cost recovered[9] on account of[10] loss on structure, contents, business interruption, loss of use, [and] extra expense."[11]

---

[8]This limitation is required by law. *See* Tex. Ins. Code Ann. § 4102.104(a).

[9]Black's Law Dictionary defines "recover" as "[t]o get back or regain in full or in equivalence"; "[t]o obtain (relief) by judgment or other legal process"; "[t]o obtain (a judgment) in one's favor"; "[t]o obtain damages or other relief; [or] to succeed in a lawsuit or other legal proceeding." *Recover*, Black's Law Dictionary (10th ed. 2014).

[10]"On account of" is a term of ordinary meaning and common usage that is synonymous with "because of," "attributable to," or "by reason of." *Southland Life Ins. v. Slagle*, 346 S.W.2d 627, 628 (Tex. App.—Waco 1961, writ ref'd).

[11]CCPA even states in its brief that Bedford Hospitality "agreed to pay CCPA based upon the amount it recovered of the final determination of replacement cost

11

Thus, to be able to show an earned commission, CCPA had to show (1) that it adjusted Bedford Hospitality's claim, (2) that Bedford Hospitality "recovered" on that claim, and (3) that the recovery was "on account of" the listed types of loss. We need not address CCPA's arguments regarding the trial court's findings and conclusions as to (1) and (2) because CCPA did not prove (3), that Bedford Hospitality recovered any amount from Colony attributable to the listed types of loss.

CCPA contends that the appraisal determination established a "binding value"[12] for the disputed amounts due under the policy and thus controls the determination of "replacement cost recovered" under its (separate) contract with Bedford Hospitality. But even assuming that the appraisal process was proper under the Colony insurance policy, the appraisal award would have been binding only between Colony and Bedford Hospitality and only as to the value of covered property or the amount of covered loss. *See Ortiz v. State Farm Lloyds*, No. 17-1048, 2019 WL 2710032, at *4 (Tex. June 28, 2019) (reciting that "appraisal awards do not serve to establish a party's liability (or lack thereof)"; thus, "[i]t simply does not follow that an appraisal award demonstrates that an insurer breached by failing to pay the

value of five specific categories of damages—structure, contents, business interruption, loss of use, and extra expense, plus the applicable sales tax."

[12]CCPA cites authority governing an appraisal award's effect as between the insured and insurer, but nothing holding that an appraisal award inures to a third party's or public adjuster's benefit. Here, the adjusting contract is silent about the effect of any appraisal determination between Bedford Hospitality and Colony.

covered loss"). In the policy and in its litigation with Bedford Hospitality, Colony expressly reserved its right to deny the claim despite the existence of an appraisal award. Thus, neither the existence of an appraisal nor the fact that Bedford Hospitality advocated that it was entitled to recover under its insurance policy for at least that amount determines whether Bedford Hospitality actually "recovered" amounts attributable to the types of losses determined by the appraisal panel.[13]

CCPA also argues that because Bedford Hospitality settled for more than the appraisal amounts, the settlement amount necessarily included amounts attributable to the appraisal. But that is not necessarily so. Colony adamantly disclaimed any liability under the policy, and the settlement agreement's recitals pointed to the need to prevent spending further time and expense in litigation.[14] Colony might have used the appraisal amount to evaluate its potential exposure if the case were to go to trial, but the fact that it settled for more than the appraisal determination is not conclusive evidence that the total settlement amount included payment for the delineated types

---

[13]Likewise, Bedford Hospitality did not judicially admit that CCPA had met its burden to prove that with respect to the adjusting contract, Bedford Hospitality had actually recovered (as opposed to merely sought) amounts attributable to structural loss, personal-property loss, business-interruption loss, lost profits, and extra expense. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (acknowledging binding effect of "clear and unequivocal" assertion of fact not pleaded in the alternative).

[14]Bedford Hospitality's principal testified that Bedford Hospitality had "suffered losses . . . of over $10 million," that the litigation with Colony "was just settled so everybody could move on," and that the "settlement had nothing to do with the appraisal award [and] . . . nothing to do with the appraisal."

13

of covered loss under the policy that were needed to trigger CCPA's contractual right to payment.

Because we hold that the trial court correctly interpreted the contract as requiring a recovery for certain categories of covered claims under the policy—and because the settlement agreement indicates that it did not include amounts due under the policy—we overrule CCPA's first and second issues. Moreover, because our disposition of these two issues forecloses CCPA's entitlement to relief even if we were to sustain its third issue, we need not address it. *See* Tex. R. App. P. 47.1.

## IV.    Burden of Proof

CCPA asserts in its fourth issue that the trial court should have placed on Bedford Hospitality the burden of proving the amounts composing the settlement-agreement total rather than requiring CCPA to prove that the Bedford Hospitality–Colony settlement agreement evinced the amounts required for CCPA to prove its commission under the adjusting contract. But when multiple parties claim interpleaded funds, each claimant must prove its own claim to the funds and its "relative priority as to all other claimants." *Branch v. Monumental Life Ins.*, 422 S.W.3d 919, 923 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 789 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)); *McBryde v. Curry*, 914 S.W.2d 616, 620 (Tex. App.—Texarkana 1995, writ denied). Additionally, as a breach-of-contract plaintiff, it was on CCPA to prove the damage amount for a breach. *Dan Dilts Constr., Inc. v. Weeks*, No. 02-17-00373-CV,

2018 WL 5668530, at *4–5 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.) (holding that independent adjuster had to prove the amount of the insured's recovery as defined in the adjusting contract so that the court could calculate the adjuster's commission).

CCPA additionally contends that all settling litigants must, in their settlement agreements, segregate and allocate specific amounts to each category of damages at issue in the suit, citing *Mobil Oil Co. v. Ellender*, 968 S.W.2d 917, 928 (Tex. 1998), and its progeny. But those cases are inapposite: they relate to the burden to allocate settlement amounts among multiple litigants for purposes of receiving a future settlement credit. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001–.004; *Mobil Oil*, 968 S.W.2d at 928; *see also In re Xerox Corp.*, 555 S.W.3d 518, 523 (Tex. 2018) (orig. proceeding) ("Chapter 33 requires the trier of fact to determine the percentage of responsibility of each claimant, defendant, settling person, and any responsible third party who has been designated in compliance with the statute."). CCPA has provided no authority, nor have we found any, that obligates an insured, when settling all claims against its insurer, to segregate and allocate specific amounts to each category of damages at issue simply because the insured had contracted with a public adjuster (especially when the adjusting contract did not obligate the insured to do so).

CCPA also relies on authority holding that the insured has the burden of proof to invalidate the appraisal, but this authority is also inapposite because it applies solely to suits between the insured and insurer. *See, e.g., Franco v. Slavonic Mut. Fire Ins. Ass'n*,

15

154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages *in a suit on the insurance contract*, leaving only the question of liability for the court." (emphasis added)).

Finally, CCPA argues that Bedford Hospitality should not have been allowed to settle with Colony in a way that kept CCPA from proving its entitlement to recover under the contract; according to CCPA, Bedford Hospitality "attempted to circumvent this contractual obligation" by entering into the unsegregated settlement. CCPA warns that saddling public adjusters with this "impossible burden" allows an insured client such as Bedford Hospitality to intentionally avoid its obligations under the adjusting contract.

But it was Conradt who provided Bedford Hospitality with the adjusting contract for CCPA; he drafted it, and he had his counsel review it.[15] Although Conradt testified that he understood the contract's payment provision to mean that Bedford Hospitality was to "pay [CCPA] ten percent of what [Bedford Hospitality] got over $130,000," that is not how the contract was written. The contract did not obligate Bedford Hospitality to slice and dice any settlement it might enter into with Colony so that particular amounts could be tied to the language of CCPA's contract.

---

[15]Conradt equivocated when asked whether he had submitted the contract form to the commissioner of insurance as Texas law requires. *See* Tex. Ins. Code Ann. § 4102.103(a) (requiring public adjuster to enter into written contract with insured "on a form approved by the commissioner" of insurance).

CCPA's proposed solution—that once it proved that Bedford Hospitality had settled the claim for some nonspecific amount, the burden should have shifted to Bedford Hospitality to segregate and allocate the amount represented by the settlement—would not only require us to impermissibly rewrite the contract, it would improperly place the burden of proof on a defendant accused of contractual breach to disprove that the plaintiff suffered damages.

We therefore overrule CCPA's fourth issue.

## V. Conclusion

Because we have overruled CCPA's dispositive issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: October 31, 2019

# CCPA ENTERPRISES, INC.

PUBLIC INSURANCE ADJUSTERS
LICENSE # 17975
P.O. Box 1401, Cleburne, TX 76033
Tel: (800) 354-5393, Fax: (866) 204-4373
Email: sales@ccpublicadjusters.com

Contract was signed on Date _9- 11_, 200_7_, Time _1:45_ am pm

TO THE INSURANCE COMPANIES INTERESTED AND TO WHOM IT MAY CONCERN:

_BEDFORD PLAZA HOTEL_ DO HEREBY AUTHORIZE AND ENGAGE CCPA ENTERPRISES, INC.

TO ADJUST THE LOSS AND DAMAGES BY _HAIL/WIND_ ON _4_ / _13_ / 200_7_

SUSTAINED BY _HI WEST_ AT _3005 AIRPORT FREEWAY_

LOCATION _BEDFORD, TX_

AND AGREE TO PAY CCPA ENTERPRISES, INC. FOR THEIR SERVICES AND HEREBY DIRECT AND
_To be Paid 10% — over 130,000.00 ALL Ready Paid R+C_
ASSIGN PAYMENT OF TEN PERCENT (10%)* PLUS SALES TAX IF APPLICABLE AS AGREED OF

THE AMOUNT AS ADJUSTED OF THE REPLACEMENT COST RECOVERED ON ACCOUNT OF LOSS

ON STRUCTURE, CONTENTS, BUSINESS INTERRUPTION, LOSS OF USE, EXTRA EXPENSE.

POLICY # _SP178493_, INSURANCE COMPANY _COLONY INSURANCE CO._

* THE TOTAL COMMISSION PAYABLE TO CCPA ENTERPRISES, INC. MAY NOT EXCEED 10% OF
THE AMOUNT OF THE INSURANCE SETTLEMENT. THE SALES TAX IS OWED TO THE STATE OF
TEXAS, NOT TO CCPA ENTERPRISES, INC. (THE PUBLIC INSURANCE ADJUSTING COMPANY
ONLY COLLECTS THE SALES TAX) _over 130,000.00 ALL Ready Paid R+c_
_(PD)_

_PAULA DIXON_

OWNER/ASSIGNEE _X_____ DATE _9_ / _11_ /0_7_, TIME _1:45_ AM PM

TEL _817-739-2808_ FAX: _815-434-1419_, CELL: _817-715-4826_
_(2) 817-267-3181_   _817-267-8091_
_(3) 415-982-1416_
ACCEPTED BY _X Ricky D Cowart_ DATE _9_ / _11_ /0_7_, TIME _1:45_ AM PM
_Ricky Cowart 512-558-1430 Tx PA# 126865_
_Cellular_

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED, INTERPRETED AND ENFORCED IN
ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE
PRINCIPLED OF CONFLICT OF LAWS. VENUE SHALL LIE IN JOHNSON COUNTY, TEXAS.

## VERBAGE REQUIRED BY TEXAS ADMINISTRATIVE CODE, RULE §19.708:

Notice: The insured may cancel this contract by written notice to the public insurance adjuster within 72
hours of signature for any reason.
We represent the insured only.
You are entering into a service contract. You are being charged a fee for this service. You do not have to
enter into this contract to make a claim for loss or damage on a policy of insurance.
If the insurance carriers pays or commits in writing to pay to the insured the policy limits of the
insurance policy in accordance with Insurance Code Article 6.13 or §862.053 within 72 hours of the loss
being reported to the insurer, the public insurance adjuster is not entitled to compensation based on a
percentage of the insurance settlement, but is entitled to reasonable compensation for the public
insurance adjuster's time and expenses provided to the insured before the claim was paid or the written
commitment to pay was received.
Notice: A public insurance adjuster may not participate directly or indirectly in the reconstruction,
repair, or restoration of damaged property that is the subject of a claim adjusted by the public insurance
adjuster or engage in any other activities that may reasonably be construed as presenting a conflict of
interest, including soliciting or accepting any remuneration from, or having a financial interest in, any
salvage firm, repair firm, or other firm that obtains business in connection with any claim the public
insurance adjuster has a contract or agreement to adjust.

Important notice: You may contact the Texas Department of Insurance to obtain information on public insurance adjusters,
your rights and complaints at: 1-800-252-3439 or you may write the Texas Department of Insurance at P.O. Box 149104,
Austin, Texas 78714-9104, Fax # (512) 475-1771.
Aviso importante: Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acera ajustores
publicos de seguros, o sus derechos o quejas al: 1-800-252-3439 o puede escribir al Departamento de Seguros de Texas P.O.
Box 149104, Austin, Texas 78714-9104, Fax # (512) 475-1771.



PLAINTIFF'S EXHIBIT 2

18